AARON BELL, ESQUIRE
PA. BAR ID #325483
7303 FFANKFORD AVENUE
P.O. BOX 22024
PHILADELPHIA, PA 19136
(215) 609-4888                                    *Attorney for Mr. Ryan Quarles*
aaronbelllawfirm@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ryan Quarles, | : | |
| Plaintiff | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| Commissioner Danielle Outlaw, in her official capacity, Officers Matthew Ponente and Gina Rozman, in their personal capacities. | : : : : : | Civil Action No. 21-cv-02813 |

**FIRST AMENDED COMPLAINT.**

Plaintiff, Mr. Ryan Quarles, by and through his attorney, aver as follows:

**PARTIES AND JURISDICTION.**

1. Plaintiff Quarles is a resident of Gwinnett County, Georgia.

2. Defendant Danielle Outlaw is the commissioner and policymaker of the Philadelphia Police Department (PPD). Commissioner Outlaw acts on behalf of the Mayor of the City of Philadelphia.

3. Defendants, Officers Matthew Ponente, badge # 7384, Gina Rozman, badge # 7079, are employed by PPD as patrol officers.

4. Jurisdiction in this case is based upon Federal questions and supplemental state law claims for relief. 28 U.S.C. §§ 1331, 1367.

5. Venue is proper in this Eastern District Court because the following events occurred within Philadelphia, Pennsylvania. 28 U.S.C. § 1391.

## FACTS.

### A.

**Mr. Quarles' Valid Georgia Gun Permit and the Pennsylvania-Georgia Reciprocity Agreement.**

6. From September 29, 2016, to July 28, 2020, Mr. Quarles possessed a valid license to carry a firearm (LTC) issued from the Probate Court in Gwinnett County, Georgia.

7. Since April 14, 2018, Pennsylvania and Georgia have been parties to a Reciprocity Agreement in which both states agreed to honor the LTCs that each issues to its respective residents who are at least 21-years old.

8. In 2020, Mr. Quarles' Georgia LTC authorized him to carry concealed firearms on the public streets of Pennsylvania pursuant to the Pennsylvania-Georgia Agreement because he was at least 21-years old.

### B.

**Commissioner Outlaw's Officers Are Not Trained to Deal With Georgia's Unique Law**.

9. Unlike most states in the country, including Pennsylvania, the State of Georgia denies all law enforcement agencies access to gun permit records. If law enforcement needs to verify a gun permit issued out of Georgia, it must contact the specific probate court from where the permit was issued. O.C.G.A. §§ 16-11-129(1), 50-18-72(a)40. Georgia's probate courts are the only entities that are capable of verifying gun permits.

10. In Pennsylvania, unlike Georgia, law enforcement officials are the custodians of all gun permit records and freely share these records with other law enforcement agencies. In fact, Commissioner Outlaw has a Gun Permit Unit (GPU) that maintains a database of Philadelphia gun permit holders.

11. Commissioner Outlaw trains PPD officers on the proper procedure to verify Pennsylvania gun permits. However, she does not train PPD's officers on how to verify gun permits from the State of Georgia, despite the existence of the Pennsylvania-Georgia Agreement.

12. Under Pennsylvania law, if a police officer cannot verify that a gun permit is legitimate, he has grounds to effectuate an arrest for violation of Pennsylvania's Uniform Firearm Act and a criminal prosecution will likely follow.

13. Consequently, when PPD officers encounter Georgia residents who conceal carry firearms under the authority of a Georgia LTC, the officers do not

know how to verify the Georgia permits and are left to their untrained discretion in figuring out how to proceed in these situations.

C.

**Mr. Quarles' February 3, 2020, Encounter with Defendants Ponente and Rozman.**

14. At approximately 4:51 PM, on February 3, 2020, Mr. Quarles was driving a vehicle in the Germantown section of Philadelphia.

15. On the same date and time, Defendants Ponente and Rozman were on duty as PPD officers, patrolling Germantown in a marked PPD patrol car.

16. While stopped at the intersection of Gray Street and Chew Avenue, Defendants saw Mr. Quarles and decided to pull him over without having a legal basis to justify the stop.

17. Mr. Quarles immediately complied with Defendants' signal to pull over. Defendants ordered Mr. Quarles and his passenger out of the vehicle and proceeded to search their persons and the vehicle for contraband.

18. Upon searching Mr. Quarles' person, Defendants found his .38 Special snub-nose revolver inside of his front pocket. Defendants also recovered Mr. Quarles' Georgia LTC from his pocket and arrested him without even determining whether the LTC was valid.

19. *After* they had already arrested Mr. Quarles for carrying a firearm without an LTC, Defendant Ponente *then* called the State of Georgia's law

enforcement information center to check the validity of the LTC.

20. An agent from Georgia's Bureau of Investigation (GBI) informed Defendant Ponente that, pursuant to Georgia law, law enforcement does not have access to any gun permit records. The GBI agent further informed Defendant that Georgia law enforcement has no way to verify an LTC and that only the local Probate Court could verify the validity of Mr. Quarles' LTC. Additionally, the GBI agent directed Defendant Gwinnett County Police Department (GCPD) dispatch because "they might be better able to connect you to somebody."

21. When Defendant Ponente called GCPD, the dispatch officer told him at least three times that Georgia law enforcement does not have access to gun permit information. Moreover, the dispatch officer even informed Defendant Ponente that if Georgia law enforcement ran someone's gun permit through the state's CID/NCIC database, it will produce **"no information."**

22. The GCPD dispatch officer then informed Defendant Ponente that he could send a "teletype" to her office and that someone will try to assist Defendant when available. When Defendant asked, "how long would that take," the dispatch officer explained, again, that her office does not have access to gun permit records and that the unit that could assist him was probably closed because it was past business hours.

23. While Defendant Ponente was attempting to get information from

Georgia law enforcement, Defendant Rozman expressed her conclusion that Mr. Quarles' Georgia LTC was "fake" without even having the opportunity to visually inspect it.

24. Even when both Defendants Ponente and Rozman verified the authenticity of Mr. Quarles' LTC by inspecting its hologram and comparing it to examples of authentic Georgia LTCs published on Georgia's official state website, they still expressed their desire to have Mr. Quarles prosecuted because they were "suspicious" of Mr. Quarles.

25. Approximately five minutes after Defendant Ponente had the teletype sent to GBI, it responded that it had **"no information"** on Mr. Quarles' gun permit. However, this information is consistent with what GBI and GCPD told Defendant about Georgia law enforcement not having access to gun permit records.

26. Defendant Ponente telephoned PPD Detective Shane Rose and told him that Georgia "denied" that Plaintiff had a valid gun permit. In explaining the situation to Detective Rose, Defendant falsely informed Detective Rose that Georgia law enforcement advised him that to verify a Georgia gun permit, one had to have "police front office send a teletype to Georgia's police front desk" to obtain LTC permit information.

27. Defendant Ponente never told Detective Rose that:

   a) Georgia law enforcement repeatedly advised Defendant that they did not have access to gun permit records;

    b) Georgia law enforcement advised Defendant that a Georgia law enforcement CID/NCIC search will produce "**no information**" on gun permits;

    c) Georgia law enforcement advised Defendant that only Georgia's Probate Court have access to gun permit records and that he **did not** call that court to verify Mr. Quarles' LTC; and,

d) the teletype was sent to the same Georgia law enforcement agency that had advised him, only moments before the teletype was sent, that it did not have access to gun permit information.

28. Because Commissioner Outlaw does not train PPD officers on how to verify a Georgia gun permit through the probate court, Detective Rose was unaware of Georgia's unique gun laws and relied on Defendant Ponente's false statements.

29. Because Commissioner Outlaw does not train PPD officers on how to verify a Georgia gun permit through the probate court, other PPD officers on the scene of Mr. Quarles' arrest, including a high-ranking supervisor, i.e., a PPD Lieutenant, had no knowledge of how to verify Mr. Quarles' Georgia gun permit. The Lieutenant was so perplexed that he even asked Defendant Ponente if he had ever encountered "this situation before?"

30. Having not been trained on how to verify a Georgia LTC, the Lieutenant relied on Defendant Ponente's false statements about having "our front desk send a teletype to Georgia's police front desk" to obtain Georgia gun permit information.

31. Having not been trained on how to verify a Georgia LTC and relying on Defendant Ponente's false statements and material omissions, Detective Rose convinced Philadelphia's District Attorney's Office (DAO) to prosecute Mr. Quarles for carrying a firearm without an LTC, among other offenses.

32. In their fabricated police reports, Defendants Ponente and Rozman falsely stated that Mr. Quarles broke traffic laws and thereafter fled from police in a dangerous highspeed chase on the public highway, even though this is belied by their own bodycams. Defendants' false report also states that the state of Georgia advised Defendants that Mr. Quarles did not have a valid LTC, which is also belied by Defendant Ponente's bodycam.

33. Moreover, Defendants illegally confiscated Mr. Quarles' firearm and LTC credential as part of their false arrest and wrongful prosecution, and still have not returned these items.

34. In fact, knowing that Mr. Quarles' LTC was valid, Defendants Ponente and Rozman removed Mr. Quarles' LTC from PPD's evidence locker and hid it from prosecutors. During the criminal proceedings, prosecutors were told that Defendants "lost" the LTC credential. However, they did not "lose" recovered firearm.

**D.**

**Mr. Quarles Wrongfully Arrested and Prosecuted a Second Time.**

35. On March 28, 2020, Mr. Quarles' Georgia LTC was still active.

36. At approximately 7 PM, on March 28, 2020, Mr. Quarles was a passenger inside of a vehicle being driven in West Philadelphia.

37. On the same date and time, PPD officers Kevin Tilghman and Aaron Turner decided to conduct a traffic stop of the vehicle in which Mr. Quarles was a passenger.

38. The Officers then proceeded to search the vehicle's occupants, including Mr. Quarles, and ultimately found a firearm.

39. Mr. Quarles could not produce his Georgia LTC credential because Defendants Ponente and Rozman illegally confiscated it during the February 3, 2020, incident, and never returned it.

40. Because Mr. Quarles could not physically produce his Georgia LTC, Officers Tilghman and Turner assumed, as permitted under Pennsylvania law, that Mr. Quarles did not have an LTC and arrested him for carrying a firearm in violation of Pennsylvania law. The Officers then transported Quarles to the 18th Police District.

41. While at the 18th District, Mr. Quarles told Detectives Gregory Jara and Francesco Campbell that he could not be arrested for carrying a gun without an

LTC because he had a valid Georgia permit.

42. Because Mr. Quarles could not physically produce his Georgia LTC credential upon request, and as required by Pennsylvania law, Detectives Jara and Campbell could not rely on Mr. Quarles' assertions of having a valid LTC. The Detectives attempted to verify Mr. Quarles' Georgia LTC status by reaching out to law enforcement in Georgia.

43. When Detectives Jara and Francesco asked Georgia's law enforcement, i.e., GBI's Fusion Center, to check its database to verify Mr. Quarles gun permit, GBI advised them that it had **"no information"** for Mr. Quarles' gun permit.

44. Having not been trained on how to verify a Georgia LTC, Detectives Jara and Francesco never called Georgia's probate court to determine whether Mr. Quarles had a valid LTC.

45. Because Commissioner Outlaw does not train PPD officers on how to verify a Georgia gun permit through the probate court, Detectives Jara and Campbell unwittingly believed that Georgia's law enforcement's **"no information"** response to their gun permit inquiry meant that Mr. Quarles did not have a valid LTC.

46. Consequently, Mr. Quarles was, again, wrongfully charged and prosecuted for carrying a firearm without an LTC even though he had a valid one from Georgia.

E.

**Commissioner Outlaw Tolerates Wrongful Arrests Stemming From Her Failure Train Despite An Obvious Need to Take Corrective Action.**

47.     After Mr. Quarles' first wrongful arrest and prosecution for carrying a firearm, Commissioner Outlaw should have realized that PPD's officers require additional supervision and training is necessary to them prevent from concluding that LTCs issued from Georgia are invalid.

48.     In response to Mr. Quarles' two wrongful prosecutions stemming from PPD officers' widespread confusion about how to verify a Georgia gun permit, Commissioner Outlaw has not, at any point in time, created a policy or training program to address and prevent future wrongful arrests and prosecutions.

49.     Commissioner Outlaw's failure to establish a policy or training program caused Mr. Quarles to be arrested and prosecuted second time for the same non-existent offense.

F.

**All Charges Dropped After Georgia's Probate Court Set The Record Straight.**

50.     When DAO followed Georgia's law and reached out to its Probate Court to verify whether Mr. Quarles had a valid LTC, the court, through Judge Christopher A. Ballar, explained Georgia's unique law on verifying gun permits and further confirmed:

"In response to your request, the Court verifies that Ryan Michael Quarles was the holder of a valid Georgia weapons carry license from September 29, 2016[,] through July 28, 2020."

51. Realizing that there was never a factual basis for any of the charges against Mr. Quarles, DAO decided to dismiss all charges, in both cases, and notified the Philadelphia's Court of Common Pleas that the charges were unwarranted. On May 20, 2021, the court of common pleas formally dismissed these charges with prejudice.

### G.

**Commissioner Outlaw Tolerates Defendants Ponente's and Rozman's Respective Pattern of Violations.**

52. Between 2018 to 2020, Defendants Ponente and Rozman have been accused of conducting multiple illegal seizures, searches, and arrests without probable cause.

53. Additionally, prior to and even after their February 3, 2020, encounter with Mr. Quarles, Defendants have been accused, on multiple occasions, of making false statements in their police reports to have citizens wrongfully prosecuted. In fact, appears that Defendant Ponente had even murdered a citizen without justification in early 2020.

54. Commissioner Outlaw has failed to supervise and properly discipline either Defendant Ponente or Rozman for their history of unlawful practices.

55. As a result of Defendants' deliberately unlawful acts, Mr. Quarles has

been officially diagnosed with severe PTSD by a LCSW and needs extensive therapy and medical treatment due to his wrongful confinement during COVID 19, and unlawful deprivation of property, and among other things.

## COUNT 1: FALSE ARREST.

56. On February 3, 2020, Defendants Ponente and Rozman, acting under the color of law, falsely imprisoned Mr. Quarles when they detained him without having any basis to believe that criminal activity was afoot or that he had committed any crime, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, of the United States Constitution.

## COUNT 2: ILLEGAL STOP.

57. On February 3, 2020, Defendants Ponente and Rozman, acting under the color of law, illegally detained Mr. Quarles when they stopped him vehicle without having any basis to believe that criminal activity was afoot or that he had committed any crime, in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

## COUNT 3: ILLEGAL SEARCH.

58. On February 3, 2020, Defendants Ponente and Rozman, acting under the color of law, illegally searched Mr. Quarles' persons and property without having any basis to believe that criminal activity was afoot or that he had committed any crime, in violation of the Fourth Amendment, applied through the

Fourteenth Amendment, of the United States Constitution.

### COUNT 4: MALICIOUS PROSECUTION.

59.     On February 3, 2020, Defendants Ponente and Rozman, acting under the color of law, initiated a malicious prosecution of Mr. Quarles by deceiving Philadelphia's DAO, with false statements, into prosecuting Mr. Quarles for crimes they knew never occurred, which ultimately resulted in Mr. Quarles' complete exoneration, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, of the United States Constitution.

### COUNT 5: CIVIL CONSPIRACY.

60.     On February 3, 2020, Defendants Ponente and Rozman, acting under the color of law, conspired, and did act in concert with each other to violate Mr. Quarles' rights when they illegally stopped, searched, arrested, and wrongfully prosecuted Mr. Quarles without probable cause, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, of the United States Constitution.

### COUNT 6: CONVERSION.

61.     On February 3, 2020, Defendants Ponente and Rozman unlawfully and without consent, or justification, converted Mr. Quarles' lawful property by

confiscating, and refusing to return, his Georgia LTC credential and his .38 snub-nosed pistol, in violation of Pennsylvania law.

## COUNT 7: FALSE ARREST.

62. Defendants Ponente and Rozman, acting under the color of law, caused Officers Tilghman and Turner to falsely imprison Mr. Quarles, when they illegally deprived him of his valid Georgia LTC credential on February 3, 2020.

63. On March 28, 2020, because Mr. Quarles was unable to produce his valid Georgia LTC credential upon request, and as required by Pennsylvania law, Officers Tilghman and Turner unwittingly arrested Mr. Quarles without probable cause, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, of the United States Constitution.

## COUNT 8: MALICIOUS PROSECUTION.

64. Defendants Ponente and Rozman, acting under the color of law, caused Mr. Quarles to be wrongfully prosecuted when they illegally deprived him of his valid Georgia LTC credential on February 3, 2020.

65. Because Mr. Quarles was unable to produce his Georgia LTC credential upon request, Officers Tilghman, Turner, and Detectives Jara and Campbell prosecuted Mr. Quarles without probable cause for carrying a firearm without a license, in violation of Fourth Amendment, applied through the Fourteenth Amendment, to the United States Constitution.

## COUNT 9: INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

66. On February 3, 2020, Defendants Ponente and Rozman intentionally caused Mr. Quarles to suffer severe emotional distress resulting in a PTSD diagnosis when they illegally seized (by force), searched, arrested, and wrongfully prosecuted Mr. Quarles without probable cause, in addition to illegally depriving him of his valid Georgia LTC credential.

67. Defendants misled detectives and DAO with materially false statements and omissions which caused DAO to formally charge and prosecute Mr. Quarles for crimes that never occurred, in violation of Pennsylvania's prohibitions against the Intentional Infliction of Emotional Distress and the Negligent Infliction of Emotional Distress.

## COUNT 10: DUE PROCESS—FAILURE TO TRAIN AND SUPERVISE.

68. Commissioner Outlaw, in her official capacity as PPD's Chief, caused Mr. Quarles to be wrongfully arrested and prosecuted for unlawful gun possession because she does not train and supervise PPD's officers how to verify gun permits pursuant to Georgia's unique gun laws. Commissioner Outlaw is aware that PPD officers will encounter Georgia LTC holders and have mishandled these encounters previously.

69. Because PPD's officers had no way of knowing how to verify Mr. Quarles' valid Georgia gun permit, Commissioner Outlaw caused Mr. Quarles to be wrongfully arrested and prosecuted twice for unlawful gun possession even though he possessed a valid Georgia LTC, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, to the Constitution.

### COUNT 11: DUE PROCESS—ENFORCEMENT OF UNLAWFUL CUSTOM AND PATTERN.

70. Commissioner Outlaw, in her official capacity as PPD's Chief, caused Mr. Quarles to be wrongfully arrested and prosecuted for unlawful gun possession by not training and supervising PPD's officers in properly verifying gun permits pursuant to Georgia's unique gun laws.

71. Commissioner Outlaw is aware, or should be aware, that PPD's officers have mishandled encounters with Georgia LTC holders but have not taken any corrective measures to prevent PPD officers from violating the rights of those they encounter.

72. Consequently, and as direct result of Commissioner Outlaw's failure to train and her tolerance of PPD's officer mistakenly arresting Georgia LTC holders without probable cause, Mr. Quarles was wrongfully arrested PPD's officers on two separate occasions, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, to the Constitution.

## COUNT 12: DUE PROCESS—ENFORCEMENT OF UNLAWFUL CUSTOM AND PATTERN.

73. Commissioner Outlaw, in her official capacity as PPD's Chief, caused Mr. Quarles to be seized, arrested, searched, prosecuted, and deprived of property without probable cause by Defendants Ponente and Rozman.

74. Commissioner Outlaw is aware, or should be aware, that Defendants Ponente and Rozman have troubling histories of illegally detaining, searching, arresting citizens without probable cause, in addition to making false statements. However, the Commissioner has not disciplined the Defendants for their histories of misconduct prior to their encounter with Mr. Quarels.

75. Consequently, Mr. Quarles' was illegally seized, searched, arrested, and prosecuted without probable cause, in addition to being unlawfully deprived of his property, in violation of the Fourth Amendment, applied through the Fourteenth Amendment, to the Constitution.

**WHEREFORE**, Mr. Quarles demands:

a) substantial compensatory damages against Defendant Outlaw, in her official capacity; and,

b) substantial compensatory and punitive damages, jointly and severally, against Defendants Ponente and Rozman in their personal capacities

        Respectfully,

        ____/s/Aaron Bell_____
        Aaron Bell, Esquire
        Attorney for Mr. Quarles

Date: November 10, 2021

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Ryan Quarles,** **Plaintiff** : | |
| v. : | |
| : | Civil Action |
| **Matthew Ponente, et al.** **Defendants** : | No. 21-cv-02813 |
| : | |
| : | |
| : | |

## CERTIFICATION.

A true and correct copy of the foregoing Motion to Supplement has been served upon Defendants via the Court's ECF filing system which automatically notifies all parties whose appearance is entered and who utilize the Court's ECF system.

Respectfully submitted,

/s/Aaron Bell
Aaron Bell, Esquire

November 15, 2021

1