**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN QUARLES,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 21-2813** |
| | : | |
| **COMMISSIONER DANIELLE** | : | |
| **OUTLAW, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of the Defendants' Partial Motion for Summary Judgment, it is **HEREBY ORDERED** that the Motion is **GRANTED** and the following Counts in Plaintiff's Amended Complaint are **DISMISSED WITH PREJUDICE**: Count 1 (false arrest), Count 4 (malicious prosecution), Count 5 (civil conspiracy), Count 7 (false arrest), Count 8 (malicious prosecution), Count 9 (negligent infliction of emotional distress), Count 10 (*Monell* – failure to train/supervise), Count 11 (*Monell* – failure to train/supervise), and Count 12 (*Monell* – failure to discipline).

BY THE COURT:

_____

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RYAN QUARLES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 21-2813** |
| | : | |
| **COMMISSIONER DANIELLE** | : | |
| **OUTLAW, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Commissioner Danielle Outlaw (in her official capacity), Officer Matthew Ponente and Officer Gina Rozman (collectively as "Defendants"), by and through their attorney, hereby file this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In support of this Motion, Defendants incorporate the attached Memorandum of Law. Defendants respectfully request that this Court enter judgment in favor of Defendants, and against Plaintiff, as to Counts 1, 4, 5, 7-12[1].

Respectfully submitted,

Date: <u>March 1, 2022</u>

<u>/s/ Shannon Zabel</u>
Shannon Zabel
Divisional Deputy City Solicitor
Pa. Attorney ID No. 321222
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5114
shannon.zabel@phila.gov

---

[1] Count 9 contains two claims: intentional infliction of emotional distress and negligent infliction of emotional distress. Officers Ponente and Rozman seek the dismissal of Count 9's negligent infliction of emotional distress claim only.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN QUARLES, | : | |
| Plaintiff, | : | |
| | : | **Civil Action** |
| v. | : | **No. 21-2813** |
| | : | |
| COMMISSIONER DANIELLE | : | |
| OUTLAW, et al., | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Now before the Court is Defendants' Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 and this Honorable Court's Policies and Procedures. Plaintiff claims his constitutional rights were violated by Defendants, Philadelphia Police Commissioner Danielle Outlaw and Officers Matthew Ponente and Gina Rozman, when he was arrested on February 3, 2020. Plaintiff brings several claims under 42 U.S.C. § 1983 against Commissioner Outlaw in her official capacity and Officers Ponente and Rozman individually. He alleges the following claims against the officers: false arrest (Count 1), malicious prosecution (Count 4), civil conspiracy (Count 5), conversion (Count 6), false arrest (Count 7), malicious prosecution (Count 8) and intentional and/or negligent infliction of emotional distress (Count 9). He brings the following claims against Commissioner Outlaw in her official capacity: *Monell* – failure to train/supervise (Count 10), *Monell* – unlawful custom and practice (Count 11) and *Monell* – failure to discipline (Count 12).

The undisputed facts show that probable cause existed to arrest Plaintiff; that Officers Ponente and Rozman did not initiate criminal proceedings against Plaintiff and that Officers Ponente and Rozman did not act with malice. Furthermore, Officers Ponente and Rozman are

3

entitled to qualified immunity in this case on Plaintiff's false arrest and malicious prosecution claims. Plaintiff also fails to adduce sufficient evidence to support his civil conspiracy claims against the officers. Additionally, Plaintiff's second set of false arrest and malicious prosecution claims against Officers Ponente and Rozman for his second arrest on March 28, 2020 fail because they were not personally involved in his arrest and probable cause existed to arrest him. Plaintiff cannot maintain a negligent infliction of emotional distress claim against the officers under the Pennsylvania Tort Claims Act. Finally, Plaintiff has adduced no evidence to sufficiently support his municipal liability claims against Commissioner Outlaw in her official capacity. For these reasons, summary judgment should be entered in favor of Defendants, and against Plaintiff, on the claims stated herein.

## II. <u>FACTUAL BACKGROUND</u>

Defendants incorporate their Statement of Undisputed Material Facts ("SUMF"), filed separately, in support of their Motion for Summary Judgment, as if fully set forth herein.

## III. <u>LEGAL STANDARD</u>

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* All inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985). "An inference based on speculation or conjecture does not

create a material factual dispute sufficient to defeat entry of summary judgment." *Modaffare v. Owens-Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 700 (E.D. Pa. 2009).

When moving for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322-24.

Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.*, 1993 WL 153810, at *2 (E.D. Pa. May 7, 1993) (citing *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 595 F. Supp. 800, 802 (E.D. Pa. 1986)). Furthermore, "[p]laintiff cannot 'simply reassert factually unsupported allegations in its pleadings.'" *Poles v. St. Joseph's Univ.*, 1995 WL 542246, at *5 (E.D. Pa. Sept. 11, 1995) (citing *Celotex*, 477 U.S. at 325). "Plaintiff *must present affirmative evidence* in order to defeat [a] properly supported motion for [summary] judgment." *Id.* (emphasis added).

## IV.    ARGUMENT

### A.    Probable Cause Existed to Arrest Plaintiff, Defeating Plaintiff's False Arrest and Malicious Prosecution Claims.

Plaintiff's claims for false arrest and malicious prosecution against Officers Ponente and Rozman require that Plaintiff establish that they lacked probable cause to arrest him. That he cannot do and his claims should therefore be dismissed.

A plaintiff seeking to proceed on a claim of false arrest must establish that the arresting officer lacked probable cause for the arrest. *See, e.g., Groman v. Twp. of Manalapan*, 47 F.3d 628, 634-36 (3d Cir. 1995); *see also Baker v. McCollan*, 443 U.S. 137, 142 (1979). A malicious prosecution claim under § 1983 requires that a plaintiff prove the following: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

Here, Plaintiff is unable to establish that Officers Ponente and Rozman lacked probable cause to arrest him. Accordingly, the Court should grant Defendants' motion for summary judgment as to the federal false arrest and malicious prosecution claims. Probable cause means the person making the arrest possessed information sufficient to reasonably believe that a crime had been (or was being) committed, and that the person arrested was guilty of committing the crime. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000); *see also Frazier v. City of Philadelphia*, No. 18-827, 2018 WL 1093314, at *1 (E.D. Pa. Feb. 28, 2018). The Third Circuit has held that "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson*, 212 F.3d at 789 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

"Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995). The inquiry as to the existence of probable cause is based on the facts and circumstances available to the arresting officer(s) "at the

6

moment of the arrest." *Barna v. City of Perth Amboy*, 42 F.3d 809, 820 (3d Cir. 1994) (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)); *see also See Karkut v. Target Corp.*, 453 F. Supp.2d 874, 879 (E.D. Pa. 2006) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003)). More recently, the Supreme Court clarified that "[p]robable cause is not a high bar" for an officer to meet. *D.C. v. Wesby*, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (internal quotation omitted). Indeed, if a "reasonable officer <u>could</u> conclude" that there "was a substantial chance of criminal activity" by the plaintiff, then that officer is "entitled to summary judgment." *Id.* at 588-589 (internal quotation omitted) (emphasis added).

The Supreme Court has repeatedly affirmed that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The limit is that "the mistakes must be those of reasonable men." *Brinegar*, 338 U.S. at 176.

Here, Officers Ponente and Rozman attempted to stop Plaintiff for a traffic violation when he fled from them in his car at a high rate of speed. SUMF at ¶¶ 2-5. Due to the car's actions in fleeing police, the officers initiated a felony car stop and removed Plaintiff and a passenger from the car. *Id.* at ¶¶ 5-6. When Plaintiff was frisked, the officers recovered a Black Ruger LCR .38, loaded with five live rounds. *Id.* at ¶ 8. Plaintiff claimed that he had a valid license to carry ("LTC") from Georgia on his person. *Id.* at ¶ 9. Over the course of thirty minutes, Officer Ponente called various law enforcement officials to investigate the validity of Plaintiff's LTC, all while

keeping his body worn camera on and keeping all investigating phone calls on speaker phone. *Id.* at ¶¶ 11-26. He first called Pennsylvania's Fusion Center and was told that that they could not run an individual's information to see if they had a valid LTC out of Georgia. SUMF at ¶¶ 14-16. Individuals at Pennsylvania's Fusion Center then gave him the phone number to Georgia's Fusion Center. *Id.* at ¶ 16. Once he got a hold of an individual at that Fusion Center, Officer Ponente was told that their center has no access to a statewide database but they recommended calling Gwinnett County Police Department for the information since Plaintiff's LTC was out of Gwinnett County. *Id.* at ¶¶ 17-18. The individual then gave Officer Ponente the number for Gwinnett County Police Department's dispatch. *Id.* at ¶ 19. Officer Ponente called Gwinnett County dispatch and explained the situation and further clarified the exact information he was seeking. *Id.* at ¶ 22. Gwinnett County dispatch stated that they didn't "have those kinds of records with us" but "what you can do is . . . you can have your dispatch center send us a teletype with that information" and "we can get it back to you as soon as we can." *Id.* at ¶ 23. Officer Ponente confirmed with Gwinnett County dispatch that Philadelphia Police dispatch had to send a teletype to Gwinnett County dispatch with Plaintiff's information. *Id.* at ¶ 24. Officer Ponente then called PPD's dispatch/front desk to relay the information necessary for the teletype. *Id.* at ¶ 25. A few minutes later, Officer Ponente received a call from PPD and the woman on the phone stated she had "nothing" come back on Plaintiff. *Id.* at ¶ 26. Consistent with his conversations with Georgia's Fusion Center and then Gwinnett County dispatch, Officer Ponente took this to mean that Gwinnett County did not have a record of Plaintiff's LTC. He called Detective Rose and explained the following to him: "I called our Fusion Center- Pennsylvania – they gave me Georgia's Fusion Center. I contacted them. I had to go through police radio, the front desk had to send a teletype to Georgia's radio room as well with that male's information and then that's how they would be able

to send me back his permit information.  They did not send any permit inf.. – there is no permit to carry information for this male."  *Id.* at ¶ 28.  After speaking with Detective Rose, Officer Ponente arrested Plaintiff for carrying a firearm without a license.  *Id.* at ¶ 29.

Given the extensive investigation and multiple conversations with Georgia law enforcement about how to check the validity of this LTC, Officers Ponente and Rozman had a reasonable basis to believe that probable cause existed to arrest Plaintiff for possessing a firearm without a license.  While the officers may have been mistaken about the validity of Plaintiff's LTC, such a mistake was a reasonable one given the facts and circumstance available to them at the time of the arrest.  Here, a reasonable officer <u>could</u> conclude that there "was a substantial chance of criminal activity" by Plaintiff as a result of conversations with Georgia law enforcement officials.  Officer Ponente had explained the situation multiple times and was clear about what specific information he was requesting from Georgia law enforcement officials.  After hearing that, Gwinnett County dispatch provided a solution – have PPD's dispatch send a teletype to their dispatch with the individual's information.  As a result of these conversations, Officer Ponente reasonably relied on the results of the process, which indicated that Gwinnett County had no record of Plaintiff's LTC.

Given the information available to the officers at the time of Plaintiff's arrest, there was sufficient probable cause to arrest Plaintiff for carrying a firearm without a license.  A reasonable officer in Officer Ponente's position could certainly conclude that probable cause existed, after spending over 35 minutes on the phone investigating the validity of the LTC and speaking with Georgia law enforcement officials.  What is more, at the time of his arrest, Plaintiff had pending felony charges in Georgia.  SUMF at ¶ 35.  Pursuant to Georgia law, "any person against whom proceedings are pending for any felony" is not authorized to carry a firearm.  Ga. Code Ann. §

16-11-129(b)(2)(C). Plaintiff was also prohibited from possessing a firearm under the terms of his

bond in the Georgia case. *Id.* at ¶ 37. Accordingly, Plaintiff was not authorized to carry a firearm

at the time of his arrest. For this additional reason, Plaintiff's false arrest and malicious prosecution

claims against the officers necessarily fail and summary judgment should be entered in favor of

Defendants on these claims.

**B. Plaintiff Cannot Otherwise Establish a Claim For Malicious Prosecution.**

Even if the Court were to find that Plaintiff had sufficiently established a lack of probable

cause, he nevertheless fails to meet other necessary elements of his malicious prosecution claim.

"If [p]laintiffs have not proffered evidence sufficient to create a triable issue of fact as to all five

prongs, their malicious prosecution claim must fail as a matter of law." *Domenech v. City of*

*Philadelphia*, No. 06-1325, 2009 WL 1109316, at *9 (E.D. Pa. Apr. 23, 2009). As explained

*supra*, Plaintiff cannot establish that Officers Ponente and Rozman lacked probable cause. Nor can

Plaintiff establish that (1) Officers Ponente and Rozman initiated the criminal proceedings against

Plaintiff; or (2) Officers Ponente and Rozman acted maliciously or for a purpose other than

bringing the plaintiff to justice.

1. Defendants did not initiate criminal proceedings.

Generally, a plaintiff cannot institute "malicious prosecution" proceedings against a police

officer because "a prosecutor, not a police officer, 'initiates' criminal proceedings against an

individual." *Stango v. Rodden*, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001) (quoting *Harris*

*v. City of Philadelphia*, No. 97-3666, 1998 WL 481061 (E.D. Pa., Aug. 14, 1998) and (citing

*Albright v. Oliver*, 510 U.S. 266, 279 n.7 (1994)). A police officer may be found to have initiated

criminal proceedings only where the police officer knowingly provided false information to the

prosecutor or otherwise interfered with the prosecutor's informed discretion. *See id.*; *see also*

*Domenech*, 2009 WL 1109316, at *8 (citing numerous cases standing for the same proposition). Accordingly, Plaintiff can only move forward on his claim of malicious prosecution against Officer Cujdik by identifying "*evidence in the record* to suggest that [he] misrepresented or concealed any material information in presenting the case to prosecutors." *Stango*, 2001 WL 1175131, at *4 (emphasis added).

In this case no such misrepresentations or concealments exist. Plaintiff has adduced no evidence indicating that Officers Ponente and Rozman "misrepresented or concealed" material information to the prosecutors or otherwise interfered with the prosecutors' informed discretion. Officers Ponente and Rozman simply filled out an arrest memo detailing the situation he encountered and a detective separately investigated and recommended charges to prosecutors. SUMF at ¶ 29. What is more, the officers' body worn cameras were on for the duration of the arrest and recorded all of Officer Ponente's communications on the phone. The officers noted this fact in their arrest memorandum for the detective and prosecutors. Far from misrepresenting or concealing, Officers Ponente and Rozman were forthright in their arrest paperwork and video footage. For this reason, Plaintiff's malicious prosecution claims against Officers Ponente and Rozman should be dismissed.

2. <u>There is no evidence Officers Ponente and Rozman acted with malice.</u>

Proof of malice requires more than an absence of probable cause. "[A] jury may infer malice from the absence of probable cause where there is enough evidence to make it a submissible issue, for example, if the prosecution was initiated for the collection of a debt, revenge, gain, or some other private purpose." *McKenna v. City of Philadelphia*, 2008 WL 4450223, at *12 (E.D. Pa. Sept. 30, 2008, Ditter, J.) (citing *Curley v. Automobile Finance Co.*, 23 A.2d 28 (Pa. 1941)). Malice may consist of "reckless and oppressive disregard of a person's rights." *Id.* "A plaintiff

must show that the criminal proceedings were initiated for some purpose other than bringing an offender to justice." *Id.* (citing *Neczypor v. Jacobs*, 169 A.2d 528, 531 (Pa. 1961)). "Such purposes may include the desire for private advantage, ill will or hostility, or where the accuser does not believe in the guilt of the accused." *Id.* (citing RESTATEMENT (SECOND) OF TORTS, § 668 (2008)).

Plaintiff is unable to produce any evidence within the record that would suggest that Officers Ponente and Rozman acted with malice. There is no evidence in the record that Officers Ponente and Rozman were motivated by any private purpose, hatred, or ill will; that they acted recklessly or oppressively; or that they caused Plaintiff to be arrested and prosecuted for any improper purpose. Without such evidence, no reasonable jury could infer malice. Consequently, Plaintiff's malicious prosecution claim fails for this additional reason.

**C.  Qualified Immunity Bars Plaintiff's False Arrest and Malicious Prosecution Claims**

What is more, Officers Ponente and Rozman are entitled to qualified immunity on Plaintiff's false arrest and malicious prosecution claims. In assessing whether an individual is entitled to qualified immunity, the Court uses a two-prong test. First, the court must "decide whether the facts . . . shown . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). Second, the court must determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 816 (quoting *Saucier*, 533 U.S. at 201). Here, Officers Ponente and Rozman are entitled to qualified immunity because, as discussed *supra*, Plaintiff has failed to provide evidence supporting a claim of a violation of clearly established law.

Even if the Court were to find that a constitutional violation had been established, qualified

immunity shields officers from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted) (reversing district court and dismissing case based on qualified immunity).    A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted) (emphasis added).  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S. Ct. 534 (1991) (internal quotations omitted).

In the probable cause context, this means that "if officers of reasonable competence could disagree" on whether probable cause exists for an arrest, then qualified immunity bars the arrestee from suing his arresting officer. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Here, Officers Ponente and Rozman reasonably relied upon statements from Georgia law enforcement officials about how to verify a LTC from Georgia.  Officer Ponente was told specifically how to request the information via teletype, sent from one dispatch center to another, to verify a Georgia LTC and he followed the specific instructions before reaching a conclusion.  The type of situation Officer Ponente encountered is one for which the doctrine of qualified immunity exists.  It allows the officer to make a mistake, despite his best efforts to thoroughly investigate.

In *Wesby*, the Supreme Court explained that "[e]ven assuming that the officers lacked actual probable cause to arrest the partygoers, they are entitled to qualified immunity because, given 'the circumstances with which [they] w[ere] confronted,' they 'reasonably but mistakenly conclude[d] that probable cause [wa]s present.' *Wesby*, 138 S. Ct. at 581-82 (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523). Here, just as the officers in *Wesby*, Officers Ponente and Rozman are entitled to qualified immunity given the circumstances with which they were confronted.  Summary judgment should be entered in their favor on Plaintiff's false arrest and malicious prosecution claims.

### D.  Plaintiff Fails to Adduce Evidence to Support a Civil Conspiracy Claim

Plaintiff's conspiracy claim fails because the record is wholly devoid of any facts to support such a claim and because Plaintiff has failed to adduce any evidence support an underlying claim.  In order to state a claim for conspiracy under § 1983, the plaintiff must demonstrate (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  *See Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). Significantly here, Plaintiff has failed to demonstrate an underlying constitutional violation, as required to maintain a § 1983 conspiracy claim. Accordingly, summary judgment should be granted on this claim.

Even if the Court were to find that Plaintiff had demonstrated an underlying constitutional violation, a § 1983 conspiracy claim must also establish a "meeting of the minds." *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (internal quotation marks and citation omitted). To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement -"the sine qua non of a conspiracy," because it is "not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa.1997).

Here, there is simply no evidence within the record, aside from Plaintiff's bald allegations, that would support a conspiracy claim. Plaintiff has adduced no evidence showing that Officer Ponente and Rozman entered into an agreement to falsely arrest and maliciously prosecute him.

The uncontroverted video evidence shows nothing of the sort. Plaintiff's conspiracy claim necessarily fails and should be dismissed.

### E. Plaintiff's Second Set of False Arrest and Malicious Prosecution Claims Arising From His Second Arrest By Different Officers Fail.

Plaintiff includes two additional claims for false arrest and malicious prosecution arising out his second arrest on March 28, 2020. Notably, neither Officer Ponente nor Officer Rozman were personally involved in arresting Plaintiff on this date. Further, probable cause existed to arrest Plaintiff.

On March 28, 2020, Plaintiff was arrested by Officers Turner and Tilghman during a car stop. SUMF at ¶¶ 30-31. When Plaintiff was searched, officers recovered a black Taurus 9MM semi-automatic handgun loaded with a magazine containing nine bullets in the magazine and one in the chamber. *Id.* at ¶32. That handgun was reported stolen out of Jonesboro, Georgia. *Id.* at ¶ 33. A detective spoke with the owner of the gun, Marquelious McNabb, who stated that it was his gun, he did not know Plaintiff and Plaintiff did not have his permission to take the gun. Id.

In his Amended Complaint, Plaintiff attempts to state a claim against Officer Ponente and Officer Rozman for this second arrest, despite their lack of involvement. Plaintiff claims that because he "was unable to produce his valid Georgia LTC credential upon request . . . Officers Tilghman and Turner unwittingly arrested [Plaintiff] without probable cause…" and "Officers Tilghman, Turner, and Detectives Jara and Campbell prosecuted [Plaintiff] without probable cause…" Am. Cmplt. at ¶¶ 63, 65.

A defendant in a civil rights action must have had personal involvement in committing the alleged violation. *Rode v. Dellarciprete*, 845 F.2d 1195 (3rd Cir. 1988). Here, Plaintiff is unable to offer any record evidence showing that Officers Ponente and Rozman were personally involved in his March 28, 2020 arrest. Instead, Plaintiff alleges that his arrest by Officers Ponente and

Rozman somehow makes them constitutionally responsible for other individuals' independent actions nearly two months later. These allegations do not remotely satisfy the requirements of claims under 42 U.S.C. § 1983.

Moreover, even if Plaintiff had somehow plausibly demonstrated the officers' personal involvement in his second arrest, it is undisputed that probable cause existed to arrest him. Plaintiff was in possession of a stolen gun. The Third Circuit has held that false arrest and malicious prosecution claims fail when probable cause exists to arrest an individual for *any* offense, even if that individual was also arrested for – or later charged with – other offenses. In other words, "[p]robable cause need only exist as to *any* offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (emphasis added) (citing *Edwards v. City of Phila.*, 860 F.2d 568, 575-76 (3d Cir. 1988); *see also Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) (noting with approval the principle "that there need not have been probable cause supporting charges for every offense for which an officer arrested a plaintiff for the arresting officer to defeat a claim of false arrest"); *Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005) (stating that the existence of probable cause as to one charge barred the plaintiff's malicious prosecution claim entirely). Further, as stated supra, Plaintiff was not authorized to carry a firearm at the time of March 28, 2020 arrest either. SUMF at ¶¶ 35-38.

Given the lack of personal involvement and the establishment of probable cause, summary judgment should be entered in favor of Officers Ponente and Rozman on Plaintiff's second set of false arrest and malicious prosecution claims.

**F. Plaintiff's Negligent Infliction of Emotional Distress Claim is Barred by the Tort Claims Act.**

Plaintiff's negligent infliction of emotional distress claim against Officers Ponente and Rozman must be dismissed as a matter of law. State law immunizes individual public servants

from civil liability unless they act with "*willful* misconduct." *See* 42 Pa. Cons. Stat. § 8550 (emphasis added). Given this standard, courts must dismiss a claim against police officers **unless** that claim alleges that the officers "acted with even more than gross negligence or recklessness." *See McNeal v. City of Easton*, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991). Plaintiff's claim is based in negligence and thus, cannot proceed against the officers.

### G. Plaintiff Fails to Adduce Evidence to Support His *Monell* Claims.

In his Amended Complaint, Plaintiff makes a litany of conclusory allegations regarding Commissioner Outlaw in her official capacity[2] in an attempt to state a claim under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). Plaintiff brings three claims against Commissioner Outlaw under 42 U.S.C. § 1983: due process – failure to train and supervise (Count 10); due process – enforcement of unlawful custom and pattern (Count 11); and due process – enforcement of unlawful custom and pattern (Count 12). Count 10 is plainly a failure to train/supervise claim and states that Commissioner Outlaw caused Plaintiff to be arrested and prosecuted "because she does not train and supervise PPD's officers how to verify gun permits pursuant to Georgia's unique gun laws." Am. Cmplt. at ¶ 68. Count 11, although its heading says "enforcement of unlawful custom and pattern," states in the body that Commissioner Outlaw caused Plaintiff be arrested and prosecuted "by not training and supervising PPD's officers in properly verifying gun permits pursuant to Georgia's unique gun laws." *Id.* at ¶ 70. Thus, Count 11 also appears to be a failure to train/supervise claim. Similarly, Count 12, although its heading says "enforcement of unlawful custom and pattern," states in the body that Commissioner Outlaw

---

[2] Official capacities suits are simply another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, an official capacity suit should be treated as a suit against the government entity itself. *Id.* at 166. Here, that entity is the City of Philadelphia.

caused Plaintiff be seized, arrested, searched, prosecuted and deprived of property without probable cause because Commissioner Outlaw "has not disciplined the Defendants for their histories of misconduct prior to their encounter with Mr. Quarels [sic]." *Id.* at ¶¶ 73-74. Thus Count 12 appears to be a failure to discipline claim.

As stated, the multitude of bald allegations are an attempt to sue the City under *Monell*. In *Monell*, the United States Supreme Court established that a municipality cannot be held liable on a *respondeat superior* theory. Instead, liability can only be imposed against a municipality when there is evidence that a constitutional violation by a municipal actor was the result of a municipal policy, custom or practice. *Monell*, 436 U.S. at 691-95. A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted). Municipal liability only attaches when "execution of [the] policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

A municipal "custom" within the meaning of § 1983 are practices engaged in by state officials that are so permanent and well settled as to constitute a "custom or usage" with the force and effect of law. *See Monell*, 436 U.S. at 691. Thus before municipal liability will be imposed, the plaintiff must prove that the municipality's alleged practices are "so widespread as to have the force of law." *Bd. of Cty. Commrs. of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis

added); *accord, Beck v. City of Pitt.*, 89 F.3d 966, 971 (3d Cir. 1996); *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (superseded by statute on other grounds).

In order to prevail on a *Monell* claim under any theory, the plaintiff must also prove causation. To do so, the plaintiff must establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This "link" must be so direct as to establish that the allegedly deficient policy or custom was the "*moving force*" behind the plaintiff's alleged injury. *Brown*, 520 U.S. at 407-08 (emphasis added); *see also Robinson v. City of Phila.*, No. 15-1574, 2015 WL 5965003, at *11 (E.D. Pa. Oct. 13, 2015) ("The plaintiff must [] demonstrate that, through its *deliberate* conduct, the municipality was the '*moving force*' behind the injury alleged.") (emphasis added) (citations and internal quotations omitted).

Finally, beyond identifying an offending policy or custom and the way in which it led to a violation of a plaintiff's rights, a plaintiff must demonstrate that an official with the power to make policy (i.e. a municipal "policymaker") is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. *See Andrews*, 895 F.2d at 1480. A *Monell* claim can only proceed if record evidence establishes that such policymaker was aware of similar unlawful conduct in the past but – with deliberate indifference – failed to take precautions against future violations, the failure of which directly led to the plaintiff's injury. *See, e.g.*, *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

As an initial matter, however, this Court need not even reach the *Monell* analysis because there is no issue of material fact as to whether any *individual* City employee violated Plaintiff's constitutional rights to be free from false arrest and malicious prosecution. Put differently, because

Plaintiff cannot establish any plausible underlying constitutional violation for these claims by a City actor, his *Monell* claim must be dismissed.

Even assuming, *arguendo*, that Plaintiff had sufficiently established a constitutional violation at this stage, his *Monell* claim nevertheless fails. Plaintiff has adduced no evidence supporting his allegations against the City. At best, Plaintiff can only rely on his allegations, which are insufficient at this stage of litigation. Plaintiff fails to produce any evidence of deliberate indifference or prior instances of factually similar police misconduct to support his failure-to-train based *Monell* claims. Moreover, even if Plaintiff proceeded under a single-incident theory, he has not established that this situation, in which an individual with a Georgia LTC is stopped and arrested for a firearms violation by Philadelphia police, has a high likelihood of recurring, such that it would necessitate obvious training.

There is no record evidence to support a finding the PPD fails to sufficiently train its police officers on situations like the one presented here. The record evidence demonstrates that PPD trains its officers to verify gun permits pursuant to PPD Directive 5.27 and by running an individual's information through the NCIC/PCIC system, as Officer Ponente attempted to do here. SUMF at ¶¶ 39-40. Moreover, there is no record evidence that any municipal "policymaker" was aware of a risk to persons in Plaintiff's position but failed – with deliberate indifference – to remedy such risk. While Plaintiff makes a series of allegations about how Commissioner Outlaw "should have realized that PPD's officers require additional supervision and training is necessary to prevent from concluding that LTCs issued from Georgia are invalid," he can offer no evidence to support these claims. Am. Cmplt. at ¶ 47 (emphasis added). Plaintiff can only point to his own conclusory pleadings as support for his claims, which is insufficient at this stage of the litigation.

*Poles*, 1995 WL 542246, at *5 ("Plaintiff cannot 'simply reassert factually unsupported allegations in its pleadings.'").

Plaintiff has also failed to establish the City's deliberate indifference.  Failure to train can be the basis of *Monell* liability when the municipality's "failure to train reflects deliberate indifference to constitutional rights." *Canton*, 489 U.S. at 388.  In order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.  *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).  In *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014), the Third Circuit stated, "Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury."

Here, Plaintiff has adduced no evidence that the City was on notice of the risk of PPD officers improperly authenticating a Georgia LTC and that it was indifferent to this risk.  Plaintiff baldly asserts that Commissioner Outlaw "is aware that PPD's officers . . . have mishandled these encounters previously" and "is aware, or should be aware, that PPD's officers have mishandled encounters with Georgia LTC holders…" Am. Cmplt. at ¶¶ 68, 71.  However, Plaintiff provides no evidence about these alleged previous encounters between PPD officers and Georgia LTC holders that support such generalized statements.  The record contains no evidence that: (1) Commissioner Outlaw knew that officers would encounter Georgia LTC holders and be unable to verify the permit's validity and (2) there was a history of PPD officers mishandling that precise situation.

Additionally, Plaintiff has failed to demonstrate a failure-to-train claim because he cannot identify specific prior instances of related police misconduct caused by allegedly inadequate training. "Establishing municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Because a plaintiff will always be able to point to something more a municipality could have done, the standard of fault under this theory is high. *Canton*, 489 U.S. at 391–92. It is not sufficient that a plaintiff can point "better or more training" that might have avoided the injury—such a claim can almost always be made. *Id.* at 391. Although the failure of a municipality to train its employees may support a *Monell* claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). For "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Plaintiff cannot produce any evidence of a pervasive pattern of PPD officers arresting Georgia LTC holders due to their alleged lack of training on how to verify those permits with a probate court in Georgia. Plaintiff vaguely references prior "encounters" that Commissioner Outlaw should have been aware of, but provides no evidence to substantiate those allegations.

Even if Plaintiff were proceeding under a single incident theory of *Monell* liability, his claims would still require dismissal. Municipal liability can sound in a "single-incident" theory when a need for training in a particular situation is "so obvious" that the failure to do so is unconstitutional. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014)). Liability in single-incident cases depends on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Bryan Cnty.*, 520 U.S. at 409, 117 S.Ct. 1382. Here, the need to train Philadelphia police officers how to

identify and authenticate a LTC permit from a state that is located hours away is undoubtedly not

"obvious."  Moreover, the likelihood that such a situation will recur, and that Philadelphia police

officers will routinely be faced with this specific task, is extremely low.  The situation alleged by

Plaintiff is extremely fact specific.  Indeed, Plaintiff admits several times, in contravention of a

single-incident theory, that this incident presents a "unique" process limited to the state of Georgia.

Am. Cmplt. at ¶¶ 28, 50, 68, 70.  Accordingly, Plaintiff cannot establish a significant likelihood

that the situation will recur and his failure to train claim must be dismissed at this stage.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, summary judgment should be entered in favor of

Defendants, Commissioner Outlaw and Officers Ponente and Rozman, and against Plaintiff, on

Counts 1, 4, 5, 7-12. Defendants respectfully request that the Court dismiss these claims against

them with prejudice.


Date: March 1, 2022                                    Respectfully submitted,


                                                       <u>/s/ Shannon Zabel</u>
                                                       Shannon Zabel
                                                       Divisional Deputy City Solicitor
                                                       Attorney Identification No. 321222
                                                       City of Philadelphia Law Department
                                                       1515 Arch Street, 14th Floor
                                                       Philadelphia, PA 19102
                                                       (215) 683-5114
                                                       shannon.zabel@phila.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **RYAN QUARLES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 21-2813** |
| | : | |
| **COMMISSIONER DANIELLE** | : | |
| **OUTLAW, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the Defendants' Motion for Summary Judgment was filed via the Court's electronic filing system and is available for downloading by all parties of record.

Date:  March 1, 2022                          Respectfully submitted,

*/s/ Shannon Zabel*
Shannon Zabel
Divisional Deputy City Solicitor
Attorney Identification No. 321222
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5114
shannon.zabel@phila.gov