## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN QUARLES,  **Plaintiff,**   v.   COMMISSIONER DANIELLE OUTLAW, et al.,  **Defendants.** | Civil Action No. 21-2813 |

## **DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. On February 3, 2020, at approximately 4:51 PM, Officer Matthew Ponente and Officer Gina Rozman were on duty in a marked police car in the area of 21st Street and Nedro Avenue in Philadelphia, PA. Exhibit A, Arrest Memo.

2. The officers observed a maroon Buick Lacrosse disregard a stop sign and fail to signal while making a right-hand turn at the intersection of 21st Street and Nedro Avenue. *Id.*

3. The officers got behind the Buick and it subsequently fled at a high rate of speed. *Id.*; Exhibit B, Officer Ponente's deposition, at 21:17-25.

4. The officers followed the car at a normal rate of speed, without activating their emergency lights or sirens, and located it at the intersection of Chew and Price Streets. Exhibit A.

5. Due to the car's actions in fleeing police, the officers initiated a felony car stop. *Id.*

6. The officers removed the occupants from the car and detained them while investigating. *Id.*

7. The driver, Plaintiff Ryan Quarles, had an unnatural bulge in his right pant pocket. *Id.*

8. When frisked, officers recovered from Plaintiff a Black Ruger LCR .38, loaded with five live rounds. *Id.*

1

9. Plaintiff stated that he had a valid permit to carry out of the state of Georgia. *Id.*

10. Both officers were wearing body worn cameras that were recording during the arrest and investigation. *Id.*; Exhibit C, Officer Ponente's body worn camera footage; Exhibit D, Officer Rozman's body worn camera footage.[1]

11. Officer Ponente took Plaintiff's license to carry ("LTC") and contacted NCIC/PCIC[2], also referred to as Pennsylvania's Fusion Center, to run the gun for ownership and check the permit's validity. Exhibit A; Exhibit C at 5:20-5:55.

12. Officer Ponente kept his phone on speaker phone mode while making phone calls to investigate the validity of Plaintiff's LTC. Exhibit A; Exhibit C at 5:20-35:50.

13. Plaintiff's LTC was issued out of Gwinnett County, GA. Exhibit E, Plaintiff's Amended Complaint at ¶ 6.

14. Pennsylvania's Fusion Center told Officer Ponente that they did not have any record of Plaintiff having a valid LTC from Pennsylvania nor were any firearms registered to Plaintiff in Pennsylvania. Exhibit C at 5:55-8:25.

15. Pennsylvania's Fusion Center stated that Officer Ponente needed to contact Georgia's state Fusion Center to check the LTC status. Exhibit A; Exhibit C at 8:25.

16. Pennsylvania's Fusion Center then gave Officer Ponente the phone number for Georgia's Fusion Center. Exhibit C at 9:05-17:25.

---

[1] Defendants have provided placeholders on the docket for the two exhibits containing video footage (Exhibits C and D). A secure link will be emailed to Chambers to access the video footage.

[2] NCIC stands for National Criminal Intelligence Center while PCIC refers to the Philadelphia Crime Information Center. Collectively, officers refer to NCIC/PCIC as the fusion center. Exhibit B at 7:24-25, 8:1-3.

17. Once he made contact with Georgia's Fusion Center, Officer Ponente explained the information he was seeking and was told that they did not have access to the statewide database.  Exhibit C at 18:30-19:00.

18. The individual from Georgia's Fusion Center recommended that Officer Ponente contact Gwinnett County's police department, since Plaintiff's LTC was issued out of Gwinnett County.  Exhibit C at 19:05-19:40.

19. Georgia's Fusion Center gave Officer Ponente the phone number for Gwinnett County's police department dispatch. Exhibit C at 20:27-20:45.

20. Officer Ponente contacted Gwinnett County dispatch, where he initially asked to speak with their Criminal Intelligence Department ("CID").  Exhibit C at 21:18-21:36.

21. Gwinnett County dispatch stated that their CID might not be in the office at the moment.  Exhibit C at 21:38-21:48.

22. Officer Ponente explained the situation to Gwinnett County dispatch and further clarified what information he was looking for.  Exhibit C at 22:00-22:50.

23. After hearing what information Officer Ponente was seeking, Gwinnett County dispatch returned to the phone and stated, "We don't have those kinds of records with us.  What you can do is you can send a tele- you can have your dispatch center send us a teletype with that information.  We can get it back to you as soon as we can." Exhibit C at 23:50-24:05.

24. Officer Ponente further followed up by asking, "So my radio room has to send you guys a teletype with this gentleman's information?" and Gwinnett County dispatch responded, "Yeah." Exhibit C at 24:28-24:36.

25. After getting the teletype number from Gwinnett County dispatch, Officer Ponente contacted PPD to ask them to send a teletype with Plaintiff's information to the Georgia teletype number. Exhibit C at 24:45-31:05.

26. A few minutes later, a PPD employee contacted Officer Ponente and said "Officer, nothing came back on him." Officer Ponente replied, "Nothing at all?" and the PPD employee answered, "No."  Exhibit C at 33:45-33:52.

27. Officer Ponente called Northwest Detectives and spoke with Detective Rose.  Exhibit B at 17:3-16; Exhibit C at 35:22-37:12.

28. Officer Ponente explained the following to Detective Rose: "I called our Fusion Center-Pennsylvania – they gave me Georgia's Fusion Center.  I contacted them. I had to go through police radio, the front desk had to send a teletype to Georgia's radio room as well with that male's information and then that's how they would be able to send me back his permit information.  They did not send any permit inf.. – there is no permit to carry information for this male."  Exhibit C at 35:49-36:15.

29. Plaintiff was subsequently arrested and later charged with a Violation of the Uniform Firearms Act for possessing a firearm without a license by Detective Rose.  Exhibit A; Exhibit F.

30. On March 28, 2020, Plaintiff was arrested again during a traffic stop by Officers Kevin Tilghman and Aaron Turner.  Exhibit G, Philadelphia Police Department Arrest Report 20-18-025396.

31. Plaintiff was the occupant of a car that was pulled over for traveling at night without its headlights on.  Once stopped, officers smelled the odor of marijuana emanating from the car.  *Id.*

32. When Plaintiff was searched, officers recovered a black Taurus 9MM semi-automatic handgun loaded with a magazine containing nine bullets in the magazine and one in the chamber. *Id.*

33. The gun was reported stolen out of Jonesboro, GA. Detective Jara spoke with the owner of the firearm, Marquelious McNabb, who stated that he did not know Plaintiff and Plaintiff did not have his permission to carry the firearm. *Id.*; Exhibit H, Ownership & Non-Permission Interview Sheet.

34. Plaintiff was arrested and charged with Violations of the Uniform Firearms Act, specifically carrying a firearm without a license and possessing a stolen firearm. Exhibit G.

35. A subsequent search of criminal records during the investigation showed that Plaintiff is currently facing charges in Georgia pursuant to a June 11, 2018 arrest for: armed robbery, aggravated assault, possession of a firearm or knife during commissioner of or attempt to commit certain felonies, financial transaction card fraud, and identity theft fraud. Exhibit I, Plaintiff's Criminal History.

36. Pursuant to Georgia law, "any person against whom proceedings are pending for any felony" is not authorized to carry a firearm. Ga. Code Ann. § 16-11-129(b)(2)(C).

37. Furthermore, per the conditions of Plaintiff's bond in Georgia, he was not authorized to carry a firearm. Exhibit J, Motion to Revoke Bond ("The Defendant … was not allowed to possess any firearms. Defendant has clearly shown that he will not abide by the conditions of his bond order, that being that the Defendant not have any firearms on his person.")

38. At the time of his February 2, 2020 and March 28, 2020 arrests, Plaintiff was not authorized to carry a firearm. Exhibit J; Ga. Code Ann. § 16-11-129(b)(2)(C).

39. PPD trains its officers how to verify a gun permit pursuant to Directive 5.27. Exhibit K, Directive 5.27 Firearms.

40. In order to verify a gun permit, an officer runs the individual's information through the NCIC/PCIC system. Exhibit L, Officer Tilghman's deposition, at 6:10-25, 7:1-5; Exhibit B at 6:19-23.