1  **MATTHEW PONENTE**, having been duly sworn, was
2  examined, and testified as follows:
3  **EXAMINATION**
4  **BY MR. BELL:**
5      Q.   All right.  Good morning, Officer Ponente.
6      A.   Good morning.
7      Q.   Hey, Officer, can you activate your video?
8      A.   Yes.
9      Q.   Thank you. If you don't understand any of
10 my questions, let me know and I'll rephrase it.  I'm
11 going to get right to the point so I'm not going to
12 waste your time with a bunch of ridiculous
13 questions.
14          What is your highest level of education?
15     A.   High school.
16     Q.   Okay.  How long have you been a police
17 officer?
18     A.   Five years.
19     Q.   Okay. Can you explain the -- the process
20 of verifying a gun license in Pennsylvania?
21     A.   The process of verifying a gun license in
22 Pennsylvania?  Normally, it's through the NCIC/PCIC
23 system.
24     Q.   Okay.  All right.  Can you explain how
25 were you trained to verify a gun license from the

1  State of Georgia?

2      A.   Through the same way you would a

3  Pennsylvania license, through the NCIC/PCIC system.

4      Q.   Okay.  So according to your training that

5  the Philadelphia Police Department provided you

6  concerning Georgia permits, you verify it the same

7  way you would verify a Pennsylvania license?

8      A.   Correct.

9      Q.   All right.  And just to be a little

10 clearer because I could have asked a better

11 question, is there a specific policy that the

12 Philadelphia Police Department has concerning

13 Georgia permits that you're aware of?

14     A.   Not that I'm aware of.

15     Q.   All right.  You briefly mentioned the

16 information centers, the PCIC and the NCIC.  Those

17 are like fusion centers, correct?

18     A.   Correct.

19     Q.   In a way.  All right.  Can you explain

20 what a fusion center is?

21     A.   Fusion centers are -- they're able to run

22 further information, more than I am on just my

23 computer.

24     Q.   Okay. All right.  So all right.  So the

25 PCIC, that refers to the Pennsylvania's Criminal

```
 1  Intelligence Center, which is a fusion center,
 2  correct?
 3      A.   Correct.
 4      Q.   And a CDI, that would be generally a local
 5  police department's criminal intelligence division?
 6      A.   Correct.
 7      Q.   All right.  Okay.  So when we talk about
 8  these information centers, all right, so because
 9  there's just something -- like in Georgia they have
10  a general fusion center.  You know that, right?
11      A.   I, I -- could you say that one more time?
12  I'm sorry?
13      Q.   All right.  You know, I'll ask you a
14  better question.
15           Let's talk about 911 dispatch.  What are
16  the responsibilities of the 911 dispatch officers to
17  the best of your knowledge?
18      A.   What are their responsibilities?
19      Q.   Yeah, yeah.  I mean, I know you're not a
20  911, just to be clear, I know you're not, you're not
21  a 911 dispatch officer, but would you tell me what
22  you know about their responsibilities?
23      A.   About a 911 dispatcher being -- as far as
24  I'm concerned, they dispatch 911 calls that they
25  received from intake.
```

1  access to gun permit records?

2      A.   Again, I don't recall.

3      Q.   Okay.  Okay, Officer.  Do you recall your

4  discussion with Detective Rose?

5      A.   Yes.

6      Q.   Okay.  Did you tell Detective Rose that

7  the Georgia Fusion officer told you law enforcement

8  don't have access to gun permit records in Georgia?

9      A.   No, I don't remember that information.

10     Q.   What specifically do you remember telling

11 Detective Rose?

12     A.   I remember telling Detective Rose that the

13 -- that your client did not have a valid permit out

14 of Georgia.  Detective Rose was able to tell me that

15 he was able to look into any prior arrests in

16 Georgia and saw, like, a prior arrest for robbery.

17     Q.   And he told you that knowing your

18 discussion now was recorded on the body cam?

19     A.   That was not recorded on body camera.

20     Q.   Okay.  So you told -- your body cam, it

21 shows you, you would agree that it shows you telling

22 Detective Rose that Georgia denied that Mr. Quarles

23 had a valid permit?

24     A.   You're asking if my body camera shows

25 that?



```
 1        Q.   Okay.  So "no incident" meaning he didn't
 2   attempt to fight you; he complied, he surrendered,
 3   right?
 4        A.   Yes.
 5        Q.   All right.  So disregarding a stop sign,
 6   that's not a violent offense?
 7        A.   Correct.
 8        Q.   At the time that you took Mr. Quarles out
 9   of his car, what evidence did you have to believe
10   that he was armed and dangerous, if anything?
11        A.   Treat every individual as if they're armed
12   and dangerous 'til proven -- proven otherwise.
13        Q.   Oh, so you just assume that individuals
14   are armed and dangerous?
15        A.   Again, I'm going off of him fleeing and
16   alluding, so --
17        Q.   Can you explain -- can -- can you describe
18   his fleeing and alluding?
19        A.   When I got behind your client, he
20   proceeded to flee at a high rate of speed.  He went
21   into oncoming traffic on the wrong, wrong side of
22   the road.  He sideswiped a car on the wrong side of
23   the road.  He disregarded all and any stop signs,
24   red lights, anything at all that was in the road to
25   -- in an attempt to evade police.
```