IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Ryan Quarles,** | : | |
| **Plaintiff** | : | |
| v. | : | |
| | : | |
| **Commissioner Outlaw, et al.,** | : | Civil Action |
| **Defendants** | : | No. 21-cv-02813 |
| | : | |
| | : | |

# ORDER

**AND NOW**, this _____ day of _____, Defendants' Motions for Summary Judgment on Counts 1, 4, 9 (as in pertains to negligent infliction of emotional distress), 10, and 11 are hereby denied. Defendant Rozman's Motion for Qualified Immunity is granted as to Count 4. Defendant Ponente's Motion for Qualified Immunity denied in its entirety.

.

By the Court:

_____
**J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ryan Quarles, | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| Commissioner Outlaw, et. al | : | Civil Action |
| Defendants | : | No. 21-cv-2813 |
| | : | |
| | : | |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.**

I. INTRODUCTION.

The Court should deny most of Defendants' motions for summary judgment because there exists genuine dispute of material facts pertaining to Mr. Quarles' claims for relief. Moreover, Mr. Quarles agrees that some of Defendants' motions should be granted.

II. STATEMENT OF FACTS.

Mr. Quarles incorporates by reference his Plaintiff's Concise Statement of Additional Facts (Pl.'s CSAF) in support of his response to Defendants Motion for Summary Judgment.[1]

---

[1] Philadelphia's Police Department is abbreviated "PPD" throughout.

1

## III. ARGUMENT.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A factual dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

2

### A. THE COURT SHOULD DENY OFFICERS PONENTE AND ROZMAN'S MOTIONS FOR SUMMARY JUDGMENT ON COUNTS 1 AND 4.

1. <u>The facts demonstrate that Mr. Quarles was falsely arrested.</u>

To bring a claim for false arrest, a plaintiff must establish "(1) that there was an arrest; and (2) that the arrest was made without probable cause." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d Cir. 2012).

Here, Officer Ponente falsely arrested Mr. Quarles for gun possession without probable cause. First, there is no dispute that Officer Ponente arrested Mr. Quarles only seconds after recovering the gun. Pl.'s CSAF ¶¶ 11-12. Second, Officer Ponente arrested Mr. Quarles without probable cause when he arrested him for unlawful gun possession only seconds after recovering the gun. <u>Id.</u> At the time Officer Ponente arrested Mr. Quarles, he had no reason to believe that Quarles did not have a license to carry. <u>Id.</u> Moreover, Officer Ponente admits that upon examining Mr. Quarles' Georgia gun permit, it appeared legitimate. <u>Id.</u> ¶ 20. At the exact moment Officer Ponente arrested Mr. Quarles for carrying a firearm without a license, he had no evidence to believe this crime was committed. <u>Id.</u> ¶¶ 11-12.

Moreover, even if Mr. Quarles was not arrested until Officer Ponente still received the teletype from Georgia law enforcement officials, Officer Ponente did not have probable cause to arrest Mr. Quarles for carrying a firearm without a license. To be sure, the Georgia Bureau of Investigations (GBI) informed Officer

3

Ponente that: (1) Georgia law enforcement does not have access to gun permit information; (2) Georgia's probate court had access to gun permit information. Id. ¶ 13. When Officer Ponente spoke with a Gwinnett County Police Department (GCPD) 911 operator—who Officer Ponente knew did not know how to verify a gun permit, id. ¶ 15—he was informed multiple times that she did not have access to gun permit records. Id. ¶16. In fact, the 911 operator specifically informed Officer Ponente that if Georgia law enforcement attempted to verify a gun permit, this search would produce nothing. Id. Thus, when the teletype came back with no information, Officer Ponente knew that the teletype's response of "no information" did not mean that Mr. Quarles did not have a valid gun permit because, as he was told on multiple occasions already, Georgia law enforcement do not have access to gun permit records. Id. ¶¶ 13-16. Finally, there is no question that Mr. Quarles was legally authorized to possess and carry firearms and ammunition by virtue of valid Georgia gun permit. Id. ¶¶ 1-3, 8-9.

The Court should deny Defendants' motion for summary judgment on Count 1 because there exist genuine disputes about material facts.

2. <u>The facts demonstrate that Mr. Quarles was maliciously prosecuted.</u>

To assert a cause of action for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must allege the following: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the

4

proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009).

Here, Officer Ponente maliciously prosecuted Mr. Quarles for carrying a firearm without a license. First, Officer Ponente initiated the criminal prosecution by causing him to be charged and prosecuted based upon his false claim that Georgia "denied" that Mr. Quarles had a valid gun permit. Pl.'s CSAF ¶¶ 22-23. Second, there is no argument or dispute that the criminal proceeding ended in Mr. Quarles' favor.

Third, the criminal proceeding was initiated without probable cause for the reasons already discussed above, supra, at 2-4. Fourth, Officer Ponente acted maliciously when he initiated Mr. Quarles' prosecution by falsely telling Detective Shane Rose that Georgia "denied" that Mr. Quarles had a valid permit and when he lied to PPD's "front desk" supervisor about the GBI informing him that Mr. Quarles gun permit could be verified via a teletype. Id. ¶¶ 22-23, 30. Officer Ponente additionally acted maliciously when he lied by omission in failing to inform Detective Rose that he was repeatedly informed by Georgia law enforcement officials that law enforcement could not verify a gun permit. Id. ¶¶ 18,

5

22-23. Fifth, there is no argument or dispute that Mr. Quarles suffered a loss of liberty resulting from being charged and prosecuted.

The Court should deny Defendants' motion for summary judgment on Count 4 because there exist genuine disputes about material facts.

### B. THE COURT SHOULD DENY OFFICERS PONENTE AND ROZMAN'S MOTION FOR SUMMARY JUDGMENT ON COUNT 4.

Mr. Quarles incorporates by reference his response listed above, supra, at 2-5, to avoid redundancy.

### C. OFFICERS PONENTE AND ROZMAN'S MOTION FOR QUALIFIED IMMUNITY SHOULD BE DENIED IN PART.

The doctrine of qualified immunity shields government officials from monetary damages unless their conduct violates clearly established constitutional or statutory rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Saucier v. Katz, 533 U.S. 194, 201-02 (2001). Thus, there is a two-pronged inquiry. Saucier, 533 U.S. at 201-02. First, a court must determine if there is evidence of a violation of a constitutional right. Id. Second, if there is evidence of a violation of a constitutional right, the court must determine whether the constitutional right was clearly established at the time. Id. Qualified immunity is an objective question to be decided by the court as a matter of law. Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).

When a defendant raises a defense of qualified immunity at summary judgment, the plaintiff bears the initial burden of coming forward with evidence that the conduct of defendant violated a clearly established constitutional or statutory right. Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). If the plaintiff satisfies this burden, the defendant must then show that there is no genuine dispute of a material fact as to the objective reasonableness of his actions to succeed at summary judgment. Id. Anderson v. Creighton, 483 U.S. 635, 641 (1987). Immunity therefore depends on whether an officer's actions were objectively reasonable. Id.

Here, Officer Ponente is not entitled qualified immunity on Mr. Quarles' false arrest and malicious prosecution claims. First, there is ample evidence that Officer Ponente violated Mr. Quarles' clearly established right to be free of an unlawful arrest without probable cause. The evidence demonstrates that when Officer Ponente, *literally seconds after finding the firearm*, arrested Mr. Quarles for carrying a firearm without a license without having any reason to believe that this crime had been committed that offense. Pl.'s CSAF ¶¶ 1-3, 8-9, 11-12. In Commonwealth v. Hicks, 208 A.3d 916 (Pa. 2019), Pennsylvania's Supreme Court held that the mere possession of a firearm in public, conceal or openly carried, does not provide an officer with a basis to even suspect that a violation of Pennsylvania's Uniform Firearm Act has occurred. Id. The text of the Fourth

Amendment expressly prohibits arrests without probable cause. U.S. Const. amend. IV. Thus, it was clearly established law that for Officer Ponente to legally arrest Mr. Quarles for carrying a firearm without a license, he first needed evidence to justify a reasonable belief that Mr. Quarles carried a firearm without a license. Id. On the facts presented in this case, Officer Ponente is not entitled to qualified immunity because he did not have probable cause to arrest Mr. Quarles for carrying a firearm without a license. Pl.'s CSAF ¶¶ 1-3, 8-9, 11-12, 20-21, 22-23, 26.

Second, there is ample evidence that Officer Ponente violated Mr. Quarles' clearly established right to be free from a prosecution supported by false materially statements. The evidence demonstrates that Officer Ponente provided a materially false narrative of what Georgia officials told him about the "teletype" and about denying that Mr. Quarles had a valid LTC. Id. ¶¶ 19-24, 27 30. The law is clearly established that Mr. Qaurles cannot be prosecuted with materially false statements. In Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014), the Third Circuit noted:

> Investigators, including appellees, should have known long before Halsey's prosecution that they would be violating a defendant's constitutional rights if they knowingly used fabricated evidence to bring about his prosecution or to help secure his conviction, particularly if the investigators themselves had fabricated the evidence.

Id. at 296. On these facts, Officer Ponente is not entitled to qualified immunity because he caused Mr. Quarles to be criminally prosecuted without probable cause based entirely upon false statements.

Moreover, there was nothing objectively reasonable about Officer Ponente's placing Mr. Quarles under arrest for carrying a firearm without a license without first having any evidence that he committed this offense. Pl.'s CSAF ¶¶ 11-12. Likewise, there was nothing objectively reasonable about Officer Ponente falsely informing Detective Rose and other officers that Georgia "denied" that Mr. Quarles had a valid gun permit to justify the wrongful prosecution. Id. ¶¶ 19-24. Halsey, 750 F.3d at 296.

The Court should deny Officer Ponente's motion for summary judgment. However, the Court should grant the motion as it pertains to Officer Rozman on Count 4.

### D. THE COURT SHOULD GRANT OFFICERS PONENTE AND ROZMAN'S MOTION FOR SUMMARY JUDGMENT ON COUNT 5.

The Court should grant Defendants' motion for summary judgment on Count 5 because Mr. Quarles is no longer pursuing this claim.

E. **THE COURT SHOULD GRANT OFFICERS PONENTE AND ROZMAN'S MOTION FOR SUMMARY JUDGMENT ON COUNTS 7 AND 8.**

The Court should grant Defendants' motion for summary judgment on Counts 7 and 8 because Mr. Quarles is no longer pursuing these claims.

F. **THE COURT SHOULD GRANT OFFICERS PONENTE AND ROZMAN'S MOTION FOR SUMMARY JUDGMENT IN PART ON COUNT 9.**

The Court should grant Defendants' motion for summary judgment partially on Count 9 to remove Mr. Quarles' negligent infliction of emotional distress claim.

G. **THE COURT SHOULD DENY COMMISSIONER OUTLAW'S MOTION FOR SUMMARY JUDGMENT ON COUNT 10.**

A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. Connick v. Thompson, 563 U.S. 51, 61 (2011). "[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact. . . ." Id. at 61-62 (emphasis added; citation and quotation marks omitted).

The troubling facts here present the classic case of a local government's failure to train that 42 USC § 1983 is ideally designed to redress. Mr. Quarles can establish that Commissioner Outlaw's admitted failure to train her officers in the

vital area of gun permit verification directly caused him to be wrongfully arrested and criminally prosecuted for serious crimes without probable cause on two separate occasions within a very short timeframe. First, the evidence demonstrates that Commissioner Outlaw knew or should have known, to a certainty, that the training she provides to PPD's officers is grossly inadequate to deal with Georgia gun permits and would result in wrongful arrests and prosecutions of lawabiding gun owners. Second, the evidence demonstrates that Mr. Quarles was subject to a highly predictable pattern of constitutional violations that Commissioner Outlaw knew would occur because of her failure to train PPD's officers how to verify Georgia gun permits. Third, the evidence demonstrates Mr. Quarles' wrongful arrests and prosecutions stemming from Commissioner Outlaw's failure to train was highly predictable—and virtually guaranteed—to the degree that Mr. Quarles is entitled to relief under the single-incident theory of liability.

For the following reasons, the Court should deny Commissioner Outlaw's motion for summary judgment on Count 10.

1. <u>Commissioner Outlaw is deliberatively indifferent as a matter of law.</u>

> [W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.

Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011).

Commissioner Outlaw, on behalf of the City of Philadelphia, is deliberately indifferent to the obvious fact that her officers will wrongfully arrest Georgia gun permit holders. Commissioner Outlaw knows that every gun permit holder in the State of Georgia is legally entitled to carry firearms throughout every county in Pennsylvania, including Philadelphia. Pl.'s CSAF ¶¶ 2, 5. The Commissioner has been on public notice, for multiple years, that Georgia's gun permit verification laws are vastly different from Pennsylvania's. Id.

However, Commissioner Outlaw intentionally fails to provide *any* training or guidance to PPD's officers on how to verify Georgia gun permits even though it is extremely obvious that her officers are ill-equipped to properly verify these permits. Id. ¶¶ 5-6. Commissioner Outlaw knows that her officers are laymen whose understanding of the law is limited to the training that she provides them. Id. ¶¶ 6-7. Because of the existence of the Reciprocity Agreement, Commissioner Outlaw knows that her officers will likely encounter and wrongfully arrest law abiding Georgia gun owners because her officers do not know how to verify Georgia gun permits. Id. ¶¶ 2, 5.

The Court should find that Commissioner Outlaw was deliberately indifferent to the obvious fact that her failure to train PPD's officers how to verify Georgia gun permits would cause constitutional violations.

> 2. <u>A highly predictable pattern of constitutional violations that Commissioner Outlaw knew would result from her failure to train.</u>
>
> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S., at 409, 117 S.Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Id., at 407, 117 S.Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

<u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1360 (2011). Mr. Quarles case highlights the predictable pattern of wrongful arrests and prosecutions that Commissioner Outlaw knew or should have known would result from her *intentional* failure to train her lay police force in the critical area of gun permit verification.

On February 3, 2020, incident Officer Ponente's bodycam shows that not one of the numerous officers at the scene the arrest had any understanding of how to verify a Georgia gun permit. Pl.'s CSAF ¶¶ 5-7, 21-22, 24-27. Even when Officer Ponente called PPD's front desk about Mr. Quarles' Georgia gun permit, no one was able to assist him because Commissioner Outlaw does not train her officers, who are not attorneys or experts in Georgia firearm laws, how comply with Georgia's unique procedure to verify gun permits. Pl.'s CSAF ¶ 30.

13

Even the highest ranking, supervising officer at the scene, Sergeant Shipanga, did not know how to verify Mr. Quarles' gun permit and even asked Officer Ponente if had ever encountered "this situation before?" Id. ¶ 25. Moreover, Officer Ponente was able to mislead his PPD colleagues about Georgia's gun permit verification procedure because Commissioner Outlaw does not train PPD officers on the proper procedure to verify a Georgia gun permit. Id. ¶¶ 22, 25-27, 30.[2]

During his March 2020 encounter with Commissioner Outlaws' untrained officers, Mr. Quarles was arrested, again, for carrying a firearm without a license solely because the officers did not know how to verify his valid Georgia gun permit. Id. ¶¶ 32-33. Detective Jara decided to have Mr. Quarles charged and prosecuted for carrying a firearm without a license because he did not know how to verify a Georgia gun permit because Commissioner Outlaw does not provide any training to her officers. Id.

The Court should find that Mr. Quarles' arrests and prosecutions constitute a predictable pattern of constitutional violations stemming directly from

---

[2] Additionally, in 2017 or 2018, Officer Ponente admitted to encountering a Georgia gun permit holder on a prior occasion and following the wrong practice to verify the gun permit in that case as well. Pl.'s CSAF ¶ 29.

14

Commissioner Outlaw's deliberate indifference to the need to train her officers how to verify Georgia gun permits.

> 3. <u>The egregious failure to train that caused Mr. Quarles to be wrongfully arrested and prosecuted twice warrants relief under the single-incident theory of liability.</u>

> The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Canton, supra, at 390, n. 10, 109 S.Ct. 1197. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. Bryan Cty., supra, at 409, 117 S.Ct. 1382. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

<u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1361 (2011).

The failure to train here is comparable to the Supreme Court's single incident liability example in <u>Canton</u>. First, there is no dispute that verifying gun permits is an important duty of a PPD officer. Pl.'s CSAF ¶ 36. Second, there is no dispute that whenever a PPD officer encounters a person armed with a firearm in public, the officer must determine whether that person is lawfully carrying the weapon. <u>Id.</u> ¶ 37. Third, after stopping an armed person in public, if an officer

15

cannot verify that the person has a valid gun permit, that person will automatically be arrested and charged for carrying a firearm without a license. Id. ¶ 38. Fourth, PPD officers are not attorneys and verify gun permits according to the training provided by Commissioner Outlaw. Id. ¶ 39.

Fifth, there is no dispute that the even though Georgia gun permits are valid in the Pennsylvania, PPD's officers have no way of verifying them because Commissioner Outlaw does not bother to train them—in any way—how to verify permits issued from Georgia. Id. ¶¶ 6-7. Sixth, there is no dispute that PPD's officers attempting to verify Georgia gun permits with the same procedure used to verify Pennsylvania permits will automatically result in an arrest of the Georgia permit holder. Id. ¶¶ 6-7, 33, 38-39.

The Court should find that the fact pattern of this case warrants relief under the single-incident theory of liability which the Supreme Court hypothesized in Canton. Thus, the Court should deny Commissioner Outlaw's motion for summary judgment on Count 10.

### H. THE COURT SHOULD DENY COMMISSIONER OUTLAW'S MOTION FOR SUMMARY JUDGMENT ON COUNT 11.

To sustain a § 1983 claim for municipal liability a plaintiff must "simply establish a municipal custom coupled with causation — i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions

16

against future violations, and that this failure, at least in part, led to their injury." Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). "Custom . . . requires a showing that the practice of state officials in question, though not authorized by law, is so permanent and well-settled as to virtually constitute law." McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) Custom requires proof of knowledge and acquiescence by the decisionmaker." Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007).

Here, for the reasons already set forth above—and to avoid redundancy—Mr. Quarles incorporates by reference the material facts and argument discussed, supra, at 10-16, because they establish that Commissioner Outlaw tolerates PPD's enforcement of an unlawful custom of wrongfully arresting and prosecuting lawful Georgia gun permit holders that is directly attributable to the City of Philadelphia.

The Court should deny Commissioner Outlaw's motion for summary judgment on Count 11.[3]

## IV. CONCLUSION.

For the reasons set forth above, the Court should deny Defendants' motions for summary judgment on Counts 1, 4, 9 (as in pertains to negligent infliction of emotional distress), 10, and 11. The Court should grant Defendant Rozman

---

[3] Mr. Quarles has no objection to the Court granting Commissioner Outlaw summary judgment on Count 12 since he is no longer pursuing this claim.

17

qualified immunity on Count 4 and deny Defendant Ponente qualified immunity entirely.

                                                    Respectfully submitted,

                                                    ___/s/Aaron Bell_____
                                                    Aaron Bell, Esquire
                                                    *Attorney for Mr. Ryan Quarles*

March 15, 2022.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Ryan Quarles,** | : | |
| **Plaintiff** | : | |
| v. | : | |
| | : | |
| **Commissioner Outlaw, et al.,** | : | Civil Action |
| **Defendants** | : | No. 21-cv-02813 |
| | : | |
| | : | |

## CERTIFICATION.

The foregoing has been served upon all parties via the Court's ECF filing notification system

    /s/Aaron Bell_____
    Aaron Bell, Esquire
    *Attorney for Mr. Quarles*

March 15, 2022