# EXHIBIT H



COURT REPORTING
LEGAL VIDEOGRAPHY
VIDEOCONFERENCING
TRIAL PRESENTATION
MOCK JURY SERVICES
LEGAL TRANSCRIPTION
COPYING AND SCANNING
LANGUAGE INTERPRETERS



NAEGELI
Expect Excellence
DEPOSITION AND TRIAL
CELEBRATING 35 YEARS IN BUSINESS
(800) 528-3335
NAEGELIUSA.COM

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RYAN QUARLES,

    Plaintiff,

VS.                              CIVIL ACTION NO. 21-CV-02813

COMMISSIONER OUTLAW, ET AL.,

    Defendants.
_____

REMOTE DEPOSITION BY VIDEOCONFERENCE OF

DETECTIVE GREGORY JARA

TAKEN ON
WEDNESDAY, FEBRUARY 2, 2022
10:14 A.M.

CITY OF PHILADELPHIA LAW DEPARTMENT,
CIVIL RIGHTS UNIT
1515 ARCH STREET, 14TH FLOOR
PHILADELPHIA, PENNSYLVANIA  19102-1595

Page 2

```
                    2
 1      APPEARANCES VIA VIDEOCONFERENCE
 2
 3  APPEARING ON BEHALF OF THE PLAINTIFF RYAN
    QUARLES:
 4  AARON BELL, ESQUIRE
 5  AARON BELL LAW FIRM
 6  7303 Frankford Avenue
 7  P.O. Box 22024
 8  Philadelphia, PA  19136
 9  (215) 609-4888
10  (833) 683-1636 (Fax)
11  aaronbelllawfirm@gmail.com
12
13  APPEARING ON BEHALF OF THE DEFENDANTS
    COMMISSIONER
14  OUTLAW, ET AL.:
15  SHANNON ZABEL, ESQUIRE
16  CITY OF PHILADELPHIA LAW DEPARTMENT
17  CIVIL RIGHTS UNIT
18  1515 Arch Street, 14th Floor
19  Philadelphia, PA  19102-1595
20  (215) 683-5433
21  Shannon.Zabel@phila.gov
22
23  ALSO PRESENT:
24  MARK L. NILSON, MEDIA COORDINATOR
25
```

Page 3

```
                    3
 1             INDEX
 2                        Page
 3
 4  EXAMINATION BY MR. BELL          5
 5
 6  EXAMINATION BY MS. ZABEL         9
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
                    4
 1           EXHIBITS
 2  Exhibit                    Page
 3
 4   1   INTERVIEW SHEET          10
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
                    5
 1     REMOTE DEPOSITION BY VIDEOCONFERENCE OF
 2            DETECTIVE GREGORY JARA
 3                   TAKEN ON
 4           WEDNESDAY, FEBRUARY 2, 2022
 5                  10:14 A.M.
 6
 7        STENOGRAPHIC REPORTER:  Would counsel
 8  stipulate to the swearing in of the witness
 9  remotely?
10        MS. ZABEL:  Yes.
11        MR. BELL:  Yes.
12        STENOGRAPHIC REPORTER:  I'm going to swear
13  you in first, Officer Jara -- or Detective Jara.
14  Could you please raise your right hand.
15  DETECTIVE GREGORY JARA, having been first duly
16  sworn, was examined, and testified as follows:
17        STENOGRAPHIC REPORTER:  Thank you.
18        And are there going to be any
19  stipulations?
20        MS. ZABEL:  No.
21        MR. BELL:  No.
22        STENOGRAPHIC REPORTER:  No, okay.
23        Ready to begin.
24  EXAMINATION
25  BY MR. BELL:
```

**Page 6**

1  Q  Good morning, Detective.
2  A  Hi. Good morning, Counselor.
3  Q  I'm not gonna keep you here all day, I
4  only have a couple questions for you. If you don't
5  understand any of the questions that I ask or if you
6  want me to rephrase something, just let me know.
7  A  Okay, sounds good.
8  Q  All right. Can you tell me, how were you
9  trained to verify a gun license?
10  A  It's -- there are computer checks that we
11  conduct, Counselor. The one that stands out to me
12  is what's called a QGLP check.
13  Q  Okay. Specifically, how do you verify a
14  gun license from the State of Georgia, if you know?
15  A  State of Georgia, outside of -- and I'm
16  just speaking like in a hypothetical situation here
17  -- outside -- if the computer check comes up
18  negative, you can attempt to contact an outside
19  agency in Georgia over the phone. Oftentimes, those
20  attempts are difficult, depending upon the time of
21  day and whatnot.
22  Q  Okay. Who specifically would you attempt
23  to reach in Georgia?
24  A  Well, any law enforcement agency, you
25  know, would be helpful. Off the top of my head, I

**Page 7**

1  can't think of a designated centralized location in
2  Georgia. That would be helpful in providing that
3  information.
4  Q  Okay. Do you remember your encounter with
5  Mr. Quarles on March 28, 2020?
6  A  I remember being the assigned investigator
7  to that arrest, Counselor. I, myself, did not take
8  the post-Miranda statement from Mr. Quarles, that
9  was two co-workers of mine, Detective Slobodian and
10  Detective Campbell.
11  Q  All right. But you were involved in --
12  you did reach out to Georgia in this case, right?
13  A  I attempted, from memory, Counselor, I
14  attempted via the computer check to confirm Mr.
15  Quarles's permit to carry. I could not find any
16  documentation via the computer checks of that
17  permit.
18  Q  Okay. You did interview Officer Kevin
19  Tilghman?
20  A  I did conduct that interview.
21  Q  All right. Officer, when you interviewed
22  Detective -- excuse me -- Kevin Tilghman, Officer
23  Tilghman, can you tell us what he told you he
24  arrested Mr. Quarles for?
25  A  Well, in summary, Detective Tilghman

**Page 8**

1  informed me that he arrested Mr. Quarles for VUFA in
2  that he was unable to determine -- he was unable to
3  discover a good permit to carry for Mr. Quarles.
4  Q  Okay. And after Mr. Quarles was arrested,
5  then you discovered that the firearm that Mr.
6  Quarles had was stolen?
7  A  That is correct. A check of the firearm
8  that it was alleged Mr. Quarles was in possession of
9  was in stolen status out of Clayton County, Georgia.
10  Q  Okay. And just to be clear, and I kind of
11  asked you this already, but, okay, the order --
12  okay, Mr. Quarles was arrested, right?
13  A  That's correct. Police Officer Tilghman
14  and his partner arrested Mr. Quarles.
15  Q  Okay. Now, after the arrest, you found
16  out that the firearm was stolen, correct?
17  A  That's correct.
18  Q  All right. Officer -- Detective, I'm
19  almost done with you. Did you have an occasion to
20  speak to Mr. Quarles?
21  A  I -- as I stated, I did not take Mr.
22  Quarles's statement.
23  Q  Okay.
24  A  Detective Slobodian and Campbell did.
25     MR. BELL: All right, Detective, that's

**Page 9**

1  all I have for you.
2     THE WITNESS: Okay, thanks, Counselor.
3     MR. BELL: Thank you.
4     MS. ZABEL: Detective, I just have a
5  couple questions for you.
6     THE WITNESS: Sure.
7  EXAMINATION
8  BY MS. ZABEL:
9  Q  When you discovered the firearm as stolen,
10  can you just describe for us briefly what that
11  process is?
12  A  So the first thing is to, you know, look
13  at the firearm and locate the serial number. There
14  is a, similar to the gun permit check, there is a
15  check to check like the status of the firearm by
16  running the serial number in PCIC/NCIC.
17     When I queried that serial number, I
18  received a stolen status hit, and if I recall
19  correctly, the gun was in stolen status out of
20  Clayton County, Georgia.
21  Q  As a detective, when you find that a gun
22  is in stolen status, do you make contact with the
23  owner of the firearm?
24  A  Yes, that is protocol, Counselor.
25  Q  Okay. I'm gonna show you just briefly



Gregory Jara Detective    February 2, 2022    NDT Assgn # 55344

Page 4

10

1   part of the paperwork here.  You'll see it pop up on
2   your screen, hopefully.
3       A   Okay.
4       Q   (Screen sharing document.)  Okay, so I'm
5   showing you what has been marked D0048, this is the
6   Ownership and Non-Permission Interview Sheet.  Is
7   this the police paperwork that you filled out
8   relevant to the firearm ownership?
9           (Whereupon, Exhibit 1 was marked for
10  identification.)
11      A   Yes, it is.
12      Q   Okay.  Can you tell me the name of the
13  complainant, please?
14      A   The lawful owner of the firearm was a
15  Marquelious McNabb.
16      Q   And when you spoke with Mr. McNabb, it
17  looks like some questions were asked -- we're now
18  looking at D49 -- it says, "Does" -- number eight --
19  "Does the complainant know the defendants?"  It
20  says, "No."  Can you tell me why you put "no" there?
21      A   I asked Mr. McNabb if he knew Mr. Quarles
22  and if Mr. Quarles had permission to be in
23  possession of the firearm, and Mr. McNabb informed
24  me that Mr. Quarles did not have permission to have
25  the firearm.

11

1       Q   All right.
2       A   And he did not know Mr. Quarles.
3       Q   Okay.
4           MS. ZABEL:  Those are all the questions
5   that I have for you.  Mr. Bell might have some
6   follow-up for you.
7           MR. BELL:  I don't have any questions.
8           MS. ZABEL:  Okay.  Detective Jara --
9           STENOGRAPHIC REPORTER:  I do.
10          MS. ZABEL:  Oh, go ahead.
11          STENOGRAPHIC REPORTER:  First of all, did
12  both of you need a copy of the transcript?
13          MS. ZABEL:  Yes, please.
14          MR. BELL:  Yes, please.
15          (Off the record.)
16          STENOGRAPHIC REPORTER:  And there was just
17  one more thing, the exhibit that you just showed,
18  are you going to send that to me?  Did you need me
19  to attach it to the transcript?
20          MS. ZABEL:  Yes, I'll send that to you.
21          STENOGRAPHIC REPORTER:  Okay.
22          MS. ZABEL:  And for the transcript, can I
23  just get electronic, no printed out version?
24          STENOGRAPHIC REPORTER:  Yes.
25          MS. ZABEL:  Thank you.

12

1           MR. BELL:  Same for me.
2           STENOGRAPHIC REPORTER:  Okay, sounds
3   great.  Thank you.
4           (WHEREUPON, the deposition of DETECTIVE
5   GREGORY JARA was concluded at 10:21 a.m.)

13

1                   CERTIFICATE
2   COMMONWEALTH OF PENNSYLVANIA   )
3                                  ) ss:
4   COUNTY OF LYCOMING             )
5   I, KELLY M. BRADLEY, RPR-Notary Public, authorized to
6   administer oaths within and for the Commonwealth of
7   Pennsylvania and take depositions in the trial of causes, do
8   hereby certify that the foregoing is the testimony of
9   DETECTIVE GREGORY JARA.
10  I further certify that before the taking of said deposition,
11  the witness was duly sworn remotely; that the questions and
12  answers were taken down stenographically by the said KELLY
13  M. BRADLEY, a RPR-Notary Public, approved and agreed to, and
14  afterwards reduced to typewriting under the direction of the
15  said Reporter.
16  I further certify that the proceedings and evidence are
17  contained fully and accurately in the notes taken by me in
18  the within deposition, and that this copy is a correct
19  transcript of the same.
20  In testimony whereof, I have hereunto subscribed by hand
21  this 3RD day of FEBRUARY, 2022.
22  _____
    Kelly M.
23  Bradley, RPR, Notary Public In and for the Commonwealth of
24  Pennsylvania My Commission Number 1079773 expires May 17,
25  2024 - - -

```
                                                         14
 1            CORRECTION SHEET
 2  Deposition of: Detective Gregory Jara   Date: 02/02/22
 3  Regarding:    Quarles vs. Commissioner Outlaw
 4  Reporter:    Bradley
 5  _____
 6  Please make all corrections, changes or clarifications
 7  to your testimony on this sheet, showing page and line
 8  number.  If there are no changes, write "none" across
 9  the page.  Sign this sheet on the line provided.
10  Page   Line   Reason for Change
11  ____  ____  _____
12  ____  ____  _____
13  ____  ____  _____
14  ____  ____  _____
15  ____  ____  _____
16  ____  ____  _____
17  ____  ____  _____
18  ____  ____  _____
19  ____  ____  _____
20  ____  ____  _____
21  ____  ____  _____
22  ____  ____  _____
23  ____  ____  _____
24          Signature_____
25             Detective Gregory Jara
```

```
                                                         15
 1            DECLARATION
 2  Deposition of: Detective Gregory Jara   Date: 02/02/22
 3  Regarding:    Quarles vs. Commissioner Outlaw
 4  Reporter:    Bradley
 5  _____
 6
 7  I declare under penalty of perjury the following to
 8  be true:
 9
10  I have read my deposition and the same is true and
11  accurate save and except for any corrections as made
12  by me on the Correction Page herein.
13
14  Signed at _____, _____
15  on the _____ day of _____, 2022.
16
17
18
19
20
21
22
23
24          Signature_____
25             Detective Gregory Jara
```

NAEGELI
DEPOSITION AND TRIAL
(800) 528-3335
NAEGELIUSA.COM

| 1 | | | |
|---|---|---|---|
| **1** 10:9 | 11:14 12:1 | 8:17 | 6:20 |
| **10:14** 5:5 | **briefly** | **correctly** | **discover** 8:3 |
| **10:21** 12:5 | 9:10 9:25 | 9:19 | **discovered** |
| | | **counsel** 5:7 | 8:5 9:9 |
| **2** | **C** | **Counselor** 6:2 | **document** 10:4 |
| **2** 5:4 | **Campbell** 7:10 | 6:11 7:7 | **documentation** |
| **2020** 7:5 | 8:24 | 7:13 9:2 | 7:16 |
| **2022** 5:4 | **carry** 7:15 | 9:24 | **done** 8:19 |
| **28** 7:5 | 8:3 | **County** 8:9 | **duly** 5:15 |
| | **case** 7:12 | 9:20 | |
| **A** | **centralized** | **couple** 6:4 | **E** |
| **a.m** 5:5 12:5 | 7:1 | 9:5 | **eight** 10:18 |
| **agency** 6:19 | **check** 6:12 | **co-workers** | **electronic** |
| 6:24 | 6:17 7:14 | 7:9 | 11:23 |
| **ahead** 11:10 | 8:7 9:14 | | **encounter** 7:4 |
| **alleged** 8:8 | 9:15 9:15 | **D** | **enforcement** |
| **already** 8:11 | **checks** 6:10 | **D0048** 10:5 | 6:24 |
| **arrest** 7:7 | 7:16 | **D49** 10:18 | **EXAMINATION** |
| 8:15 | **Clayton** 8:9 | **day** 6:3 6:21 | 5:24 9:7 |
| **arrested** 7:24 | 9:20 | **defendants** | **examined** 5:16 |
| 8:1 8:4 | **clear** 8:10 | 10:19 | **excuse** 7:22 |
| 8:12 8:14 | **comes** 6:17 | **depending** | **exhibit** |
| **assigned** 7:6 | **complainant** | 6:20 | 10:9 11:17 |
| **attach** 11:19 | 10:13 10:19 | **deposition** | |
| **attempt** | **computer** 6:10 | 5:1 12:4 | **F** |
| 6:18 6:22 | 6:17 7:14 | **describe** 9:10 | **FEBRUARY** 5:4 |
| **attempted** | 7:16 | **designated** | **filled** 10:7 |
| 7:13 7:14 | **concluded** | 7:1 | **firearm** 8:5 |
| **attempts** 6:20 | 12:5 | **detective** 5:2 | 8:7 8:16 |
| | **conduct** | 5:13 5:15 | 9:9 9:13 |
| **B** | 6:11 7:20 | 6:1 7:9 | 9:15 9:23 |
| **begin** 5:23 | **confirm** 7:14 | 7:10 7:22 | 10:8 |
| **Bell** 5:11 | **contact** | 7:25 8:18 | 10:14 10:23 |
| 5:21 5:25 | 6:18 9:22 | 8:24 8:25 | 10:25 |
| 8:25 9:3 | **copy** 11:12 | 9:4 9:21 | **first** 5:13 |
| 11:5 11:7 | **correct** 8:7 | 11:8 12:4 | 5:15 9:12 |
| | 8:13 8:16 | **determine** 8:2 | 11:11 |
| | | **difficult** | |

| | | | |
|---|---|---|---|
| **follow-up** 11:6 | 10:4 | **McNabb** 10:15 10:16 10:21 10:23 | **owner** 9:23 10:14 |
| **G** | **information** 7:3 | **memory** 7:13 | **ownership** 10:6 10:8 |
| **Georgia** 6:14 6:15 6:19 6:23 7:2 7:12 8:9 9:20 | **informed** 8:1 10:23 | **mine** 7:9 | |
| | **interview** 7:18 7:20 10:6 | **morning** 6:1 6:2 | **P** |
| | | | **paperwork** 10:1 10:7 |
| **gonna** 6:3 9:25 | **interviewed** 7:21 | **myself** 7:7 | **partner** 8:14 |
| **great** 12:3 | **investigator** 7:6 | **N** | **PCIC/NCIC** 9:16 |
| **GREGORY** 5:2 5:15 12:5 | **involved** 7:11 | **negative** 6:18 | **permission** 10:22 10:24 |
| **gun** 6:9 6:14 9:14 9:19 9:21 | **J** | **Non-Permission** 10:6 | **permit** 7:15 7:17 8:3 9:14 |
| | **Jara** 5:2 5:13 5:13 5:15 11:8 12:5 | **O** | **phone** 6:19 |
| **H** | | **occasion** 8:19 | **please** 5:14 10:13 11:13 11:14 |
| **hand** 5:14 | **K** | **Officer** 5:13 7:18 7:21 7:22 8:13 8:18 | **police** 8:13 10:7 |
| **having** 5:15 | **Kevin** 7:18 7:22 | | **pop** 10:1 |
| **head** 6:25 | **knew** 10:21 | **Oftentimes** 6:19 | **possession** 8:8 10:23 |
| **helpful** 6:25 7:2 | **L** | **Oh** 11:10 | **post-Miranda** 7:8 |
| **Hi** 6:2 | **law** 6:24 | **okay** 5:22 6:7 6:13 6:22 7:4 7:18 8:4 8:10 8:11 8:12 8:15 8:23 9:2 9:25 10:3 10:4 10:12 11:3 11:8 11:21 12:2 | **printed** 11:23 |
| **hit** 9:18 | **lawful** 10:14 | | **process** 9:11 |
| **hopefully** 10:2 | **license** 6:9 6:14 | | **protocol** 9:24 |
| **hypothetical** 6:16 | **locate** 9:13 | | **providing** 7:2 |
| | **location** 7:1 | | |
| **I** | | | **Q** |
| **identification** 10:10 | **M** | **order** 8:11 | **QGLP** 6:12 |
| **I'll** 11:20 | **March** 7:5 | **outside** 6:15 6:17 6:18 | **Quarles** 7:5 7:8 7:24 8:1 8:3 8:4 |
| **I'm** 5:12 6:3 6:15 8:18 9:25 | **marked** 10:5 10:9 | | |
| | **Marquelious** 10:15 | | |

| | | | |
|---|---|---|---|
| 8:6  8:8<br>8:12  8:14<br>8:20<br>10:21  10:22<br>10:24  11:2<br>**Quarles's**<br>  7:15  8:22<br>**queried** 9:17<br>**questions** 6:4<br>  6:5  9:5<br>  10:17<br>  11:4  11:7<br><br>--- R ---<br>**raise** 5:14<br>**reach** 6:23<br>  7:12<br>**Ready** 5:23<br>**recall** 9:18<br>**received** 9:18<br>**record** 11:15<br>**relevant** 10:8<br>**remember**<br>  7:4  7:6<br>**REMOTE** 5:1<br>**remotely** 5:9<br>**rephrase** 6:6<br>**REPORTER**<br>  5:7  5:12<br>  5:17  5:22<br>  11:9<br>  11:11  11:16<br>  11:21  11:24<br>  12:2<br>**running** 9:16<br><br>--- S ---<br>**screen** 10:2 | 10:4<br>**send** 11:18<br>  11:20<br>**serial** 9:13<br>  9:16  9:17<br>**sharing** 10:4<br>**Sheet** 10:6<br>**showed** 11:17<br>**showing** 10:5<br>**similar** 9:14<br>**situation**<br>  6:16<br>**Slobodian** 7:9<br>  8:24<br>**sounds** 6:7<br>  12:2<br>**speak** 8:20<br>**speaking** 6:16<br>**specifically**<br>  6:13  6:22<br>**spoke** 10:16<br>**stands** 6:11<br>**State** 6:14<br>  6:15<br>**stated** 8:21<br>**statement** 7:8<br>  8:22<br>**status** 8:9<br>  9:15  9:18<br>  9:19  9:22<br>**STENOGRAPHIC**<br>  5:7  5:12<br>  5:17  5:22<br>  11:9<br>  11:11  11:16<br>  11:21  11:24 | 12:2<br>**stipulate** 5:8<br>**stipulations**<br>  5:19<br>**stolen** 8:6<br>  8:9  8:16<br>  9:9  9:18<br>  9:19  9:22<br>**summary** 7:25<br>**Sure** 9:6<br>**swear** 5:12<br>**swearing** 5:8<br>**sworn** 5:16<br><br>--- T ---<br>**testified**<br>  5:16<br>**Thank** 5:17<br>  9:3  11:25<br>  12:3<br>**thanks** 9:2<br>**Tilghman** 7:19<br>  7:22  7:23<br>  7:25  8:13<br>**top** 6:25<br>**trained** 6:9<br>**transcript**<br>  11:12  11:19<br>  11:22<br><br>--- U ---<br>**unable** 8:2<br>  8:2<br>**understand**<br>  6:5<br>**upon** 6:20 | --- V ---<br>**verify** 6:9<br>  6:13<br>**version** 11:23<br>**via** 7:14  7:16<br>**VIDEOCONFEREN<br>  CE** 5:1<br>**VUFA** 8:1<br><br>--- W ---<br>**WEDNESDAY** 5:4<br>**we're** 10:17<br>**whatnot** 6:21<br>**Whereupon**<br>  10:9  12:4<br>**witness** 5:8<br>  9:2  9:6<br><br>--- Y ---<br>**You'll** 10:1<br><br>--- Z ---<br>**ZABEL** 5:10<br>  5:20  9:4<br>  9:8  11:4<br>  11:8<br>  11:10  11:13<br>  11:20  11:22<br>  11:25 |